BOARD OF EDUCATION OF BREMEN COMMUNITY HIGH SCHOOL DISTRICT NO. 228, COOK COUNTY, Plaintiff-Appellant, *v.* BREMEN DISTRICT NO. 228, JOINT FACULTY ASSOCIATION, *et al.*, Defendants-Appellees.

First District (5th Division)   No. 83—200

Opinion filed May 20, 1983.

Anthony Scariano, Robert H. Ellch, and Joanne P. Schochat, all of Scariano, Kula & Associates, P.C., of Chicago Heights, for appellant.

Michael B. Erp and Irving M. Friedman, both of Katz, Friedman, Schur & Eagle, of Chicago, for appellees.

JUSTICE LORENZ delivered the opinion of the court:

This appeal concerns the validity of an arbitration award which decided that plaintiff, the Board of Education of Bremen High School District No. 228 (the Board), violated a collective bargaining agreement when it voted to dismiss eight tenured teachers without first holding a public hearing under section 24—12 of the School Code. (Ill. Rev. Stat. 1981, ch. 122, par. 24—12.) The Board filed an action to vacate the arbitrator's award on the following grounds.

1. Neither the dismissed teachers nor their collective bargaining representative have standing to rely upon section 24—12 of the School Code.

2. The arbitrator exceeded his authority.

3. The award is based on erroneous findings of fact and conclusions of law.

The trial court affirmed the arbitrator's award, and we affirm. The following facts are material to our decision.

The collective bargaining agreement between the Board and the Bremen District No. 228 Joint Faculty Association (the Association) provides that "[i]f a reduction of tenured certificated personnel occurs, it will be in accordance with Chapter 122, Article [sic] 24—12 of the School Code of Illinois." Section 24—12 of the School Code pro-

vides that

> "If a teacher in contractual continued service is removed or dismissed as a result of a decision of the board to decrease the number of teachers employed by the board or to discontinue some particular type of teaching service, written notice shall be given the teacher by registered mail at least 60 days before the end of the school term, together with a statement of honorable dismissal and the reason therefor \*\*\*. Whenever the number of honorable dismissal notices based upon economic necessity exceeds, 5, or 150% of the average number of teachers honorably dismissed in the preceding 3 years, whichever is more, then the board shall hold a public hearing on the question of dismissals. Following the hearing and board review the action to approve any such reduction shall require a majority vote of the board members." Ill. Rev. Stat. 1981, ch. 122, par. 24—12.

The collective bargaining agreement also contains a grievance mechanism for "any complaint of a violation, misinterpretation, or misapplication of the terms and conditions of [the] Agreement." It is further provided that an aggrieved party can have a grievance submitted to arbitration if he or she is not satisfied with the outcome of the grievance procedure. The submission agreement in the collective bargaining contract specifies that

> "The arbitrator shall have no power to alter, add to, or subtract from the terms of this Agreement or require action that is prohibited by law. The sole power of the arbitrator shall be to determine whether the terms of this Agreement have been violated, misinterpreted, or misapplied. The decision of the arbitrator shall be rendered to the Board and to the grievant in writing and shall be binding upon both parties."

On March 1, 1982, Robert Wheat, superintendent of District 228, sent a letter to Cathy Fronczak, president of the Joint Faculty Association, notifying her that the district would have to fire 10 tenured teachers because of a projected decrease in enrollment. The superintendent stated that the district had decided to maintain a ratio of 23.5 students per teacher, explaining that "it is the responsibility of all of us to attempt to operate this school district in a sound fiscal manner not only for the coming year, but for future years. This continues to be a problem because of the State of Illinois' unpredictable financial situation, plus the uncertainty at the county level because of assessment practices, variation in the state multiplier, and lower percentage of tax collections."

The Board met on March 22, 1982, and a member moved to dis-

miss eight tenured teachers because of "declining enrollment; teachers returning from leaves; [and] fluctuations in subject area needs." This motion passed, and the teachers were notified the next day that they were honorably dismissed from employment.

The Association filed grievances on behalf of the teachers, and eventually, after various procedural skirmishes which are not material to our decision, the grievances were submitted to arbitration.

During arbitration the Association claimed that the Board fired the aggrieved teachers because of "economic necessity," and that the Board violated the collective bargaining agreement because it voted to dismiss the teachers without first holding the public hearing which section 24—12 requires whenever a board of education dismisses a specified number of teachers because of economic necessity.

It was stipulated that the number of dismissals exceeded the number required to trigger the hearing requirement, but the Board asserted that the dismissals were not based on economic necessity. According to the Board, the dismissals were based solely on its desire to maintain a ratio of 23.5 students per teacher.

The arbitrator noted that a declining enrollment will result in a decreased amount of financial aid from the State, and the arbitrator concluded that "[a]n inference is inescapable that there are economic reasons for reducing the number of teachers to maintain a student/faculty ratio during a period of declining enrollment." Furthermore, the arbitrator found that "[a]ny doubt that the School Board acted due to economic necessity is dispelled by Superintendent Wheat himself in his letter of March 1, 1982 to JFA President Fronczak."

Having found that the dismissals were based on economic necessity, the arbitrator found that the Board violated the provision of section 24—12 which required the Board to hold a public hearing before voting on the dismissals. Accordingly, the arbitrator found that the Board violated the provision of the collective bargaining agreement in which it promised to comply with section 24—12. Also, in light of the fact that the Board failed to hold the required public hearing before it voted to dismiss the teachers (and before it gave notice of the dismissals), the arbitrator decided that the notices of dismissal were void. As a result, the arbitrator concluded that the Board was obligated to reinstate the aggrieved teachers for the 1982-83 school year.

The Board filed an action against the Association and the aggrieved teachers seeking to vacate the award. The defendants counterclaimed for an order confirming the award, and upon cross-motions, the trial court entered summary judgment on behalf of the defendants.

OPINION

■■ We first consider the argument that neither the Association nor the aggrieved teachers have standing to rely upon section 24—12 of the School Code. According to the Board, section 24—12 was not designed to benefit or protect teachers, and only members of the general public can demand the public hearing which the statute requires. We need not decide this question, however, because the Board entered into a collective bargaining agreement in which it promised the Association that it would comply with section 24—12. Even if the defendants could not directly rely upon section 24—12, the Board created a separate obligation, a contractual obligation, when it agreed that it would obey section 24—12. This agreement is binding because the legislature did not authorize the Board to disobey section 24—12, and the promise to comply with the statute did not violate the principle that a school board cannot give up a power which the legislature has exclusively assigned to school boards. (Compare *Lindblad v. Board of Education* (1906), 221 Ill. 261, 271.) Therefore, the Association is entitled to assert its contractual rights as a party to the collective bargaining agreement, and the aggrieved teachers, as members of the collective bargaining unit which the Association represented, can assert contractual rights as the intended beneficiaries of the agreement between the Board of the Association.

Next, we consider the argument that the arbitrator lacked authority to determine whether the Board violated section 24—12. According to the Board, it has a nondelegable power to determine whether dismissed teachers were dismissed because of economic necessity.

Under long-standing Illinois case law, a school board cannot delegate to another any function which the legislature has exclusively assigned to school boards. (See *Lindblad v. Board of Education* (1906), 221 Ill. 261, 271.) "Even if a dispute between the parties involves the application and interpretation of provisions of the collective bargaining agreement, it is not arbitrable if it would constitute an impermissible delegation of discretionary public responsibility specifically reposed by law in [school boards]." *Board of Trustees v. Cook County College Teachers Union, Local 1600* (1979), 74 Ill. 2d 412, 420.

Section 24—12 obligates school boards to hold a public hearing when the number of teachers dismissed because of economic necessity exceeds a specified threshold. But, when teacher dismissals are based on economic necessity, the School Code does not give a school board authority to deny that the dismissals were in fact based on economic necessity. The Board simply does not have authority to deny that the aggrieved teachers were dismissed because of economic necessity if

they actually were dismissed because of economic necessity.

■■ The General Assembly did not give school boards exclusive authority to judge whether they have complied with the requirements of section 24—12, and authorizing an arbitrator to decide whether a school board has violated section 24—12 does not usurp any power which the law has exclusively reposed in school boards. We therefore hold that a school board can validly agree to let an arbitrator decide whether it has complied with section 24—12 of the School Code.

In a related argument, the Board contends that the arbitrator did not have authority to determine whether the Board issued valid dismissal notices. However, when tenured teachers are dismissed because of economic necessity, section 24—12 imposes upon school boards a nondiscretionary obligation to give notices which specify the reason for the dismissals. This gives the teachers an opportunity to determine whether the board is obligated to hold a public hearing before voting on the dismissal, and it also gives the targeted teachers a chance to prepare for the required hearing.

■■ We agree that a collective bargaining agreement cannot authorize an arbitrator to review whether a school board should have dismissed teachers based on economic necessity (see *Lindblad v. Board of Education* (1906), 221 Ill. 261, 271), but this does not prevent an arbitrator from being authorized to determine whether a school board has fulfilled its nondiscretionary statutory obligation of giving tenured teachers notices which specify why they are to be dismissed. The collective bargaining agreement in the present case authorized an arbitrator to determine whether the Board complied with section 24—12, and we conclude the arbitrator was empowered to decide whether the statutory notices were valid.

· The next issue is whether the arbitrator's award should be vacated on the grounds that it is based upon erroneous findings of fact and conclusions of law. According to the Board, the arbitrator erred when he found that the dismissals were based on economic necessity, and he erred when he concluded that the failure to hold a public hearing, and the failure to specify the true reason for the dismissals, rendered the notices of dismissal void.

Arbitration of collective bargaining agreements is a substitute for litigation. (See *Board of Trustees v. Cook County College Teachers Union, Local 1600* (1979), 74 Ill. 2d 412, 419.) When reviewing the validity of an award "made pursuant to a collective bargaining agreement, the court is directed to look to common law grounds for vacating an arbitration award that were in effect before the enactment of the Uniform Arbitration Act." *Board of Education v. Chicago Teachers Un-*

*ion, Local No. 1* (1981), 86 Ill. 2d 469, 474, citing Ill. Rev. Stat. 1977, ch. 10, par. 112(e).

The common law attitude toward arbitration awards was succinctly stated in *Podolsky v. Raskin* (1920), 294 Ill. 443, 450: "The object of arbitration is to avoid the formalities, delay and expense of litigation in court, and the decision of the arbitrators, acting within the scope of their authority under the submission agreement, is conclusive on the parties upon matters of law and fact."

The supreme court further explained in *Merritt v. Merritt* (1850), 11 Ill. 565, 568, that "[w]hether [an arbitrator's] decision was correct or erroneous, is not the proper subject of inquiry. The parties selected their own tribunal, for the adjustment of all their transactions, and, in the absence of all fraud, misconduct and partiality, they must abide by its decision." Therefore, "[a] mere error of judgment as to the law or facts of the case, will not vitiate the award." *Ross v. Watt* (1854), 16 Ill. 99, 102.

There are, of course, exceptions to the general rule of unreviewability, and at common law courts could set aside an award if there was fraud, bias, misconduct, or, in certain cases, if a mistake of law or fact appeared on the face of the award. (*White Star Mining Co. v. Hultberg* (1906), 220 Ill. 578, 601, 602, 610.) Thus, "a mistake in the draft of the award may be reformed so as to conform to the one actually made by the arbitrators." (220 Ill. 578, 602.) Nevertheless, judicial review of the fact finding and legal reasoning of an arbitrator is circumscribed because it would undermine the finality which the parties bargained for when they agreed to submit their disputes to an arbitrator for a binding and nonappealable decision. (220 Ill. 578, 602.) The supreme court therefore explained that when reviewing the alleged "mistakes" of an arbitrator, " '*** "*** [c]ourts should be careful to avoid a wrong use of the word 'mistake,' and by making it synonymous with *mere error of judgment* assume to themselves an arbitrary power over awards ***" '." (Emphasis added.) 220 Ill. 578, 602, quoting *Knox v. Symonds* (1791), 1 Ves. Jr. 369.

■ In the present case, the Board contends that the award should be vacated on the grounds that it was based on an erroneous finding of fact. Replying to such an argument, the court stated in *White Star*:

"'*** As to the matters of fact, the learned counsel of the [appellants] have argued to us that from the evidence which was before [the arbitrators] they ought to have decided the facts differently. But as we have no right to look into the evidence for the purpose of correcting their errors of judgment, in the

absence of fraud, the argument can avail nothing.' The foregoing language is clearly applicable to the case at bar and we regard the reasoning unanswerable." 220 Ill. 578, 608, quoting *Mickles v. Thayer* (1867), 96 Mass. (14 Allen) 114.

The findings of fact made by the arbitrator in the present case are amply supported by the evidence, but at most the arbitrator made a mere error of judgment, and we would not be justified in setting aside the award on this basis.

The Board further asserts that the arbitrator erroneously concluded that failure to comply with section 24—12 rendered its dismissal notices void. Again, however, the arbitrator at most made a mere error of judgment. Even if the arbitrator's "view of the law was plainly wrong, still the parties selected their own tribunal, and that tribunal having acted, the courts will afford no relief, even through the arbitrators have mistaken the law, where it does not appear that they have been guilty of fraud, partiality or misconduct." *Stone v. Baldwin* (1907), 226 Ill. 338, 345.

The Board does not assert that there was fraud, partiality or misconduct in the present case, and we would not be justified in vacating the award in the present case even if the arbitrator was "plainly wrong" in deciding that the dismissal notices were void.

■ Finally, we note we agree that the arbitrator did not have authority to remedy violation of the collective bargaining agreement by ordering reinstatement of the aggrieved teachers. (See *Board of Trustees v. Cook County College Teachers Union, Local 1600* (1976), 62 Ill. 2d 470, 476.) However, the arbitrator ruled that the Board's defective notices were void, and, under the submission agreement, this decision was binding on the parties. And because the parties are bound by the ruling that these notices are void, we find that the aggrieved teachers were rehired by operation of law under the statute which provides that when a teacher has not received valid notice that he or she will not be rehired, "the employee shall be deemed reemployed, and not later than the close of the then current school term the board shall issue a regular contract to the employee as though the board had reemployed him in the usual manner." Ill. Rev. Stat. 1981, ch. 122, par. 24—11.

Based on all the reasons given above, the judgment of the circuit court is affirmed.

Affirmed.

WILSON, P.J., and MEJDA, J., concur.