CELIA M. (PENA-ROQUE) HAMPSON, Plaintiff-Appellant, v. BOARD OF EDUCATION, Thornton Fractional Township High School, District No. 215, Defendant-Appellee (The State Board of Education *et al.*, Judicially Impleaded Third-Party Appellees).

First District (2nd Division)   No. 1—88—1569

Opinion filed May 21, 1991.—Rehearing denied July 11, 1991.

818

Celia M. Hampson, of Ventura, California, appellant *pro se*.

Robbins, Schwartz, Nicholas, Lifton & Taylor, Ltd., of Chicago (Allen D. Schwartz, of counsel), for appellee.

JUSTICE HARTMAN delivered the opinion of the court:

Plaintiff, Celia M. Hampson, appeals from a circuit court order denying her *mandamus* relief against defendant, Board of Education, Thornton Fractional Township High School, District No. 215 (Board).[1] The parties are before this court for a second time, following the dismissal of plaintiff's earlier appeal. (*Hampson v. Board of Education, Thornton Fractional Township High School District No. 215* (1st Dist. 1986), No. 82—2791 (unpublished order under Supreme Court Rule 23).) (134 Ill. 2d R. 23.) Three dispositive issues for review are presented here, including whether (1) the circuit court's denial of her action for *mandamus* relief was contrary to law and void for lack of jurisdiction; (2) the court abused its discretion by overruling an interlocutory order entered by another circuit court judge; and (3) plaintiff's tenure rights were eliminated in violation of the Illinois School Code (Ill. Rev. Stat. 1977, ch. 122, par. 1—1 *et seq.*) and she is entitled to reinstatement by operation of law. Only those facts needed to facilitate a basic understanding of the long procedural history of this 12-year-old case need be set forth here.

Plaintiff was hired as a teacher of Spanish by Thornton Fractional Township High School (Thornton Fractional) in 1968. Although she received tenure in 1970, she taught less than full time from 1975 to 1979. In December 1977, plaintiff's attempt to return to a full-time teaching schedule was denied. On March 21, 1979, plaintiff was dismissed as part of a general reduction in teaching staff by the Board. The dismissal letter mistakenly classified plaintiff as a nontenured teacher, apparently due to her part-time status, and cited section 24—

---

[1]Plaintiff filed her "complaint to issue writ of mandamus" on August 8, 1979; it should be noted, however, that writs were abolished in Illinois effective January 1, 1979. (See Ill. Rev. Stat. 1987, ch. 110, par. 2—1501.) This order will utilize the modern nomenclature so as to conform with the plaintiff's party designations.

11 of the School Code (Code) as authority. Ill. Rev. Stat. 1977, ch. 122, par. 24—11.

Plaintiff challenged the nontenured classification of her dismissal in a grievance filed with the Board on March 24, 1979, noting that she had been granted tenure in 1970 and had never lost any of her tenure rights. The grievances ultimately were denied.

Plaintiff thereafter filed her *mandamus* action on August 8, 1979, founded upon section 24—12 of the Code (Ill. Rev. Stat. 1977, ch. 122, par. 24—12), seeking reinstatement and requesting that her dismissal be set aside due to her tenured status. Section 24—12 at that time provided that if a teacher in tenured service is removed or dismissed by a school board in order to decrease the number of teachers employed, the board first must remove or dismiss all nontenured teachers.

In its answer, the Board contended that plaintiff had either abandoned her tenure or was not qualified for any available position, and it asserted that the reason for her dismissal was economic in nature. The Board also pleaded several affirmative defenses, including (1) plaintiff's dismissal due to a decrease in enrollment; (2) plaintiff's relinquishment of her tenure by seeking part-time status; (3) plaintiff's lack of "bumping" rights; and (4) plaintiff's abandonment of her teaching position. An amendment to the affirmative defenses stated that because plaintiff was dismissed for economic reasons the Board did not violate the Code, whether plaintiff was tenured or not.

In an order dated May 10, 1982, the circuit court directed the Board to file charges with the Illinois State Board of Education (State Board), relying upon section 24—12. The order also suspended plaintiff "pending the institution and ultimate resolution of dismissal proceedings." The court limited the hearing only to deciding issues raised in the proceedings by plaintiff's complaint and the Board's response. On October 25, 1982, before any administrative proceeding commenced, the court entered a declaratory judgment holding that plaintiff was a tenured teacher since April 21, 1970, and had done nothing to lose that status. The ruling iterated that plaintiff's discharge was subject to a hearing by the State Board under section 24—12.

At the court-ordered administrative proceeding, the hearing officer, Robert L. Agusto, ruled that plaintiff was unqualified to make a claim for any available teaching positions and also noted that he lacked jurisdiction to consider the existence or absence of economic reasons for the discharge since the Code does not afford hearings to tenured teachers dismissed for such causes.

On August 2, 1983, plaintiff filed a "First Amended Complaint—Count II"[2] in the circuit court seeking review of the hearing officer's administrative decision. Plaintiff also appealed the portion of the circuit court's order which referred the case to the hearing officer. As noted above, this court dismissed the appeal as premature. Thereafter, the cause was returned to the circuit court, where, on June 12, 1987, Judge Thomas J. O'Brien reconsidered and reversed Judge James Murray's[3] interlocutory order which sanctioned the administrative hearing. The court ordered further that a *de novo* review be held, in the form of an evidentiary hearing.

Following the evidentiary hearing, the circuit court found that plaintiff was a tenured teacher within section 24—12 at the time of her dismissal. At the close of its findings, the court stated that three issues remained to be resolved, including whether (1) plaintiff was properly discharged for a reduction in force (RIF); (2) the RIF was a pretext for the dismissal; and (3) if the RIF was proper, plaintiff could have "bumped" anyone pursuant to the Code.

Each party then filed cross-motions for summary judgment, supported by affidavits, asserting that there was no genuine issue of material fact and that each movant was entitled to judgment as a matter of law. Plaintiff argued, *inter alia*, that her notice of termination failed to meet the Code's requirements because it dismissed her as a nontenured teacher. In its decision of November 30, 1987, the circuit court ruled, among other things, that plaintiff's notice of termination met the requirements of the Code; the Board had no statutory or contractual duty to terminate employees in reverse order of seniority; and that plaintiff was legally qualified to teach only Spanish. The remainder of the Board's motion for summary judgment was denied, as was plaintiff's motion, because the court found the existence of material questions of fact as to whether the Board's purported reason for discharge was pretextual and whether the Board deprived plaintiff of a position for which she was qualified by misalignment of teaching assignments.

---

[2]Plaintiff also filed two other amendments entitled "First Amended Complaint Count I Part I" and "First Amended Complaint Part II" during 1984. In addition, plaintiff attempted to file a "Second Amended Complaint" on December 1, 1987; however, the circuit court disallowed certain pleadings before granting her leave to file the amendment.

[3]Judge Murray was the original circuit judge assigned to the case. Upon his ascension to the appellate court, the case was reassigned to Judge O'Brien.

On December 24, 1987, plaintiff filed a motion to vacate the circuit court's order granting summary judgment, which was orally denied by the court on December 28, 1987. The court thereafter conducted a four-day evidentiary trial, announcing its ruling on January 11, 1988, and finding that plaintiff did not prove by a preponderance of the evidence that the school board honorably discharged her at a time when there was no economic necessity and that there was no evidence of intentional misaligned teaching assignments or rehiring practices designed to prevent plaintiff's employment as a teacher. Plaintiff's post-trial motion was denied on April 18, 1988.

A timely notice of appeal was then filed, seeking reversal of (1) the portion of the circuit court's order of October 25, 1982, which held that plaintiff was subject to an administrative hearing; (2) the mandates filed by this court on March 24, 1986, and November 3, 1986; (3) the hearing officer's decision of June 30, 1983; and (4) the circuit court's judgment of January 11, 1988, and its subsequent order denying plaintiff's post-trial motion. Plaintiff's appeal has proceeded *pro se.*

I

Plaintiff initially asserts that the circuit court erred in denying her petition for *mandamus* for reinstatement to her full-time tenured teaching position because the Board improperly eradicated her tenure rights in violation of the Code.

The circuit court actually resolved in her favor the issue of plaintiff's tenure at the time of the termination as well as her alleged abandonment of that tenure, ruling that her tenure was intact at the time of the termination and that the Board failed to prove abandonment, one of its defenses to the action. The question that remained was whether plaintiff was then entitled to reinstatement.

The notice given plaintiff purported to proceed under section 24—11 instead of section 24—12 of the Code. Section 24—12 governed the dismissal of tenured teachers during a RIF. In *Board of Education of Bremen Community High School District No. 228 v. Bremen District No. 228 Joint Faculty Association* (1984), 101 Ill. 2d 115, 461 N.E.2d 406 *(Bremen)*, the supreme court noted that the purpose of the tenure statutes is to assure continued service by able and experienced teachers and, toward that end, the rule of strict construction applied. The Board's failure to give proper notice could have resulted in voiding the RIF in this case under *Bremen*, but for plaintiff's insistence upon having her contentions heard. Because of her perseverance, her contentions regarding reinstatement were given full consideration, albeit

with an unfavorable result. Had proper notice been given, plaintiff could not have received any greater consideration under the law than she did.

■ Section 24—12 imposed upon the Board the obligation of providing those tenured teachers dismissed for economic necessity with a notice which sets forth a statement of honorable dismissal and a reason for the termination. (See also *Board of Education of Bremen Community High School District No. 228 v. Bremen District No. 228 Joint Faculty Association* (1983), 114 Ill. App. 3d 1051, 1056, 449 N.E.2d 960.) The mislabeled notice given here provided plaintiff with both the statement of honorable dismissal and the reason for the termination, thereby complying with the salient requirements and legislative intent of section 24—12, although purporting to proceed under section 24—11. Since the statutory objective of the notice was met, the notice complied with the intent of the statute and satisfied its general purpose of informing plaintiff of the Board's reasons behind the termination action. See *Donahoo v. Board of Education, School District Number 303* (1952), 346 Ill. App. 241, 245, 104 N.E.2d 833, *rev'd on other grounds* (1952), 413 Ill. 422, 109 N.E.2d 787.

Plaintiff also contends that the Board denied her rights under the Code by failing to hold an administrative hearing before taking away her tenure.

■ As previously noted, although the Board erroneously believed that plaintiff had lost her tenure, the circuit court, through two different judges, specifically found that plaintiff was tenured at the time of her dismissal. Under the Code then in effect, the Board was not required to hold an administrative hearing when it dismissed a tenured teacher for economic necessity (Ill. Rev. Stat. 1977, ch. 122, par. 24—12; see also *Lenard v. Board of Education of Fairfield School District No. 112* (1979), 74 Ill. 2d 260, 263, 384 N.E.2d 1321); such hearings were required only when a teacher was removed or dismissed for any other reason or cause. (Ill. Rev. Stat. 1977, ch. 122, par. 24—12.) Here, the instant notice of termination gave economic necessity as the reason for dismissal, as did the Board resolution which authorized the action. No due process rights afforded to plaintiff were violated in this branch of the case.

## II

Plaintiff also asserts that her seniority rights were violated by the Board when it failed to first terminate three other tenured teachers who were junior to her seniority.

At the time of plaintiff's dismissal, the Code did not contain the seniority provision contained in the present statute. (Compare Ill. Rev. Stat. 1977, ch. 122, par. 24—12, with Ill. Rev. Stat. 1987, ch. 122, par. 24—12.) Public Act 81—515 added the seniority provision and became effective September 9, 1979, some six months after plaintiff's termination. (Pub. Act 81—515, eff. Sept. 9, 1979 (amending Ill. Rev. Stat. 1977, ch. 122, par. 24—12).) Plaintiff cites no case which addresses or supports this argument; instead, she realleges her contentions that unqualified teachers were given positions for which she was qualified, thereby challenging the circuit court's finding that she is qualified to teach only Spanish, contrariwise claiming only through her own testimony that she is qualified to teach biological sciences, literature and reading. Even this conclusion fails.

The evidence adduced before Judge O'Brien on this point is contrary to plaintiff's argument. Michael Drobnak, the then current director of personnel at Thornton Fractional, reviewed plaintiff's transcripts in an affidavit submitted with the Board's motion for summary judgment. Drobnak swore that plaintiff was not qualified for any of the positions for which she claimed legal qualification to hold. At the four-day evidentiary hearing, plaintiff again persisted in arguing her qualifications in areas other than Spanish. The Board called Dr. Marvin Feinberg, the previous director of personnel at Thornton Fractional, to address this question. He, too, concluded that she was not so qualified.

■ Although plaintiff possessed a teacher's certificate covering grades 6 through 12, that alone does not render her "legally qualified" to teach the above-listed subjects. In *Lenard v. Board of Education* (74 Ill. 2d at 268-69), the supreme court held that, at the threshold level, a teacher is "legally qualified" within the meaning of the Code only if the teacher meets the State Board semester-hour requirements *in addition to* possessing a valid teaching certificate. At bar, plaintiff did not fulfill these requirements.

The Board introduced into evidence "The Illinois Program for Evaluation, Supervision, and Recognition of Schools—State Board of Education Document Number 1," which lists the requirements necessary to qualify as a teacher of any specific subject. Plaintiff, here, first claims that she is qualified to teach biological sciences. State Board requirements to teach biological sciences include completion of 24 semester hours in the field, of which eight must be in botany; eight in zoology; five in laboratory coursework in both sciences or, alternatively, 10 in biology lab work. Plaintiff's transcripts reveal that only 4 of her 25 semester hours in biology were in botany and none were in

zoology. She received no credit for any of the required 10 hours of biology laboratory work.

As to plaintiff's qualifications to teach literature and reading, which appear to fall under the general heading of "Language Arts," a candidate must complete 24 semester hours, including six in rhetoric and composition and not more than eight in speech and journalism. Plaintiff fell short of these requirements in having completed only 15 semester hours.

Plaintiff claimed qualification to teach "humanities," which will be considered as "Social Studies." State Board requirements necessitated the completion of 24 semester hours in the field, 16 of which must be in history, the latter to include eight hours of world history and five hours of United States history. Plaintiff received credit for only 18 semester hours in this field.

■ The record, therefore, amply supports the circuit court's determination that plaintiff was legally qualified to teach only Spanish. Her appellate allegations concerning the hiring of other teachers for these subjects are irrelevant because the Code required that a dismissed teacher be offered a job only if she herself is legally qualified for it. (Ill. Rev. Stat. 1977, ch. 122, par. 24—12.) Furthermore, the evidence presented below indicates that those teachers of Spanish who were retained were all fully qualified to hold their respective teaching positions.

### III

Plaintiff also contends that her teaching position was not eliminated and the Spanish class sizes actually increased, not decreased, as claimed by the Board.

■ Section 24—12 prohibits a bad-faith alignment of teaching assignments to excise a "position" which could be filled by a tenured teacher for whom dismissal is sought, as well as improper teaching assignments made in good faith. (*Hayes v. Board of Education of Auburn Community Unit School District* (1981), 103 Ill. App. 3d 498, 502, 431 N.E.2d 690.) Although possessing discretion to create and rearrange positions, the Board must act in consonance with the spirit of the tenure laws. (*Higgins v. Board of Education of Community Unit School District No. 303* (1981), 101 Ill. App. 3d 1003, 428 N.E.2d 1126.) Neither an improper good-faith alignment nor a bad-faith alignment has been shown in the case *sub judice*.

■ The evidence shows that before the RIF, Spanish classes were small; each of the four full-time Spanish teachers was scheduled for at least two hours of planning and supervision periods, and each taught

four regularly scheduled academic classes. In contrast, plaintiff taught three classes and had one scheduled planning period. Dr. James Verchota, superintendent of Thornton Fractional at the time of plaintiff's dismissal, testified that the four full-time teachers' planning schedules could be reduced and the classes spread out among them, maximizing their time and increasing the average class size, which was the district's goal in implementing the RIF. The schedule for the semester immediately following the RIF reveals that this goal was met. The two full-time teachers on staff at Thornton Fractional South both increased their schedules to five daily academic classes and reduced their planning sessions to one per day. One full-time teacher from Thornton Fractional North taught one class at the South building before returning to the North building and continuing her full-time schedule. By September 1980, only the two full-time teachers at Thornton Fractional South were teaching Spanish, each conducting five classes daily. The record evidence thereby supports the circuit court's finding that no transfers were made to deprive plaintiff of her position and that the RIF conducted by the Board was nonpretextual.

## IV

Plaintiff further contends that the Board had an administrative remedy for its affirmative defenses which it was required to exhaust before submitting itself for review to the circuit court. She claims that the circuit court exceeded its authority in holding an evidentiary hearing on the Board's affirmative defenses.

As previously noted, this case was returned to the circuit court following the dismissal of plaintiff's first appeal due to want of appellate jurisdiction. Upon return to the circuit court docket, the cause was reassigned to Judge O'Brien. After reviewing the file, he ruled that an evidentiary hearing must be held on some limited issues in order to instill some organization into a "disorganized" case, a conclusion well drawn.

■■ Under the Code, the Administrative Review Act then in effect (Ill. Rev. Stat. 1977, ch. 110, par. 264 *et seq.*, now Ill. Rev. Stat. 1989, ch. 110, par. 3—101 *et seq.*) was applicable only to the review of dismissals of tenured teachers after a hearing was held in accordance with the provisions of section 24—12, which provided an elaborate procedure for a hearing on the issue of "cause" for the dismissal of tenured teachers (*Brown v. Board of Education, Galatia Community Unit School District No. 1* (1976), 38 Ill. App. 3d 403, 409, 347 N.E.2d 791); no such procedure was then prescribed when a tenured teacher was dismissed for economic necessity. (Ill. Rev. Stat. 1977, ch.

122, par. 24—12.) Plaintiff's assertions that the school board failed to exhaust its administrative remedy are without legal foundation since the statutory scheme did not provide for administrative relief where, as here, the faculty reduction was due to economic reasons.

Plaintiff asserts that Judge Murray exceeded his jurisdiction by ordering plaintiff to submit to an administrative hearing in his order of May 10, 1982. Judge Murray's order was reversed by Judge O'Brien as detailed above; the complained-of administrative hearing was ruled irrelevant and not considered by Judge O'Brien.

## V

Plaintiff claims that since the circuit court found she was tenured at the time of her dismissal, it immediately should have granted her *mandamus* relief. This argument fails because, at that point in the proceedings, plaintiff had not yet established a clear legal right to the remedy she sought as is required by seeking *mandamus* relief. See *People v. Teschner* (1980), 81 Ill. 2d 187, 194, 407 N.E.2d 49; *Bremen*, 101 Ill. 2d at 121-22.

■ Plaintiff assigns error in Judge O'Brien's reversal of Judge Murray's order after the cause was returned to the circuit court from the appellate court, as heretofore noted. In its dismissal of the appeal, this court ruled that Judge Murray's order was not a final and appealable order. Accordingly, Judge O'Brien did not err in reversing the interlocutory order since, before entry of a final order, a trial judge is not bound by an order of a previous judge. See *Towns v. Yellow Cab Co.* (1978), 73 Ill. 2d 113, 121, 382 N.E.2d 1217; *Goldberg v. Goldberg* (1981), 103 Ill. App. 3d 584, 587, 431 N.E.2d 1060; *Richichi v. City of Chicago* (1964), 49 Ill. App. 2d 320, 325, 199 N.E.2d 652.

Plaintiff identifies as error the circuit court's consideration of "issues not relevant to the rights of a tenured teacher which have been violated." She maintains that the economic issue was not properly before the court because it was not alleged in her pleadings. She further notes that the court erred in assigning her the burden of proving that the district's RIF was pretextual. Those issues arose through the Board's pleadings, however.

■ In response to plaintiff's initial complaint, the Board alleged several defenses, one of which was the economic necessity of the termination action undertaken. In its amended answer, filed February 20, 1980, the Board denied violating the Code in terminating plaintiff, and plaintiff, as a complainant seeking *mandamus* relief, had the burden of proving her clear legal right to the relief sought. (See *People v. Teschner*, 81 Ill. 2d at 194; *People ex rel. Latimer v. Board of Educa-*

*tion* (1946), 394 Ill. 228, 68 N.E.2d 305; *Machinis v. Board of Election Commissioners* (1987), 164 Ill. App. 3d 763, 518 N.E.2d 270.) Although the Board steadfastly maintained that plaintiff had abandoned her tenured position, the Board had the burden of proving plaintiff's "abandonment," which the circuit court found it failed to meet, as indicated by its ruling on September 23, 1987. The Board claimed a RIF due to its deteriorating financial condition; therefore, the RIF was a proper issue for the court to consider. The Board came forward with evidence intended to support its defenses.

Plaintiff cites several cases of improper dismissals to support her allegations including *Brown v. Board of Education* (38 Ill. App. 3d 403), *Friesel v. Board of Education of Medinah Elementary School, District No. 11* (1979), 79 Ill. App. 3d 460, 398 N.E.2d 637, and *Smith v. Board of Education of East St. Louis School District No. 189* (1977), 52 Ill. App. 3d 647, 367 N.E.2d 296. None of these cases, however, are persuasive; all are factually distinguishable and involve different aspects of section 24—12. In each case, the teacher was dismissed for a reason other than an economic reduction, and the courts held that in such circumstances, a hearing was required by law. The situations addressed in these cases, therefore, are not implicated in the instant case.

## VI

Finally, plaintiff argues that the circuit court erred in denying her reinstatement by operation of law to her tenured teaching position.

■■■ *Mandamus* is an extraordinary remedy used to direct a public official or body to perform a duty which plaintiff has a clear right to have performed and which is ministerial, *i.e.*, a duty which does not involve the exercise of judgment or discretion (*Crump v. Illinois Prisoner Review Board* (1989), 181 Ill. App. 3d 58, 60, 536 N.E.2d 875; see also *Hagopian v. Board of Education* (1978), 56 Ill. App. 3d 940, 942, 372 N.E.2d 990). As the record here demonstrates, and as previously discussed above, plaintiff did not have a clear legal right to reinstatement by operation of law irrespective of her tenure at the time of her dismissal. See *Bremen*, 101 Ill. 2d at 121-22.

Based upon the evidence presented at bar, we cannot say that the circuit court erred in denying plaintiff *mandamus* relief. For the foregoing reasons, we affirm.

Affirmed.

DiVITO and COCCIA, JJ., concur.