MARGARET HITT *et al.*, Plaintiffs-Appellants, v. GEORGE RYAN, Secretary of State, Defendant-Appellee.

Fourth District   No. 4—99—0096

Argued August 24, 1999.—Opinion filed September 21, 1999.

John M. Myers (argued), of Rabin, Myers & Hanken, P.C., of Springfield, for appellants.

James E. Ryan, Attorney General, of Chicago (Joel O. Bertocchi, Solicitor General, and Jan E. Hughes (argued), Assistant Attorney General, of counsel), for appellee.

JUSTICE McCULLOUGH delivered the opinion of the court:

On September 25, 1998, Margaret Hitt, Kenneth Fryman, Kenton Manning, and Donald Zumwalt, plaintiffs, filed a complaint against George Ryan, then Secretary of State of Illinois (Secretary), in his official capacity, seeking a declaratory judgment determining whether an unwritten policy of the State violates their veteran's preference rights as set forth in the Secretary of State Merit Employment Code (Employment Code) (15 ILCS 310/10b.7 (West 1998)), and a writ of *mandamus* enforcing their rights under the Employment Code. On November 13, 1998, the Secretary filed a motion to dismiss pursuant to sections 2—619(a)(1) and (a)(9) of the Code of Civil Procedure (735 ILCS 5/2—619(a)(1), (a)(9) (West 1998)), arguing, in pertinent part, the plaintiffs failed to exhaust their administrative remedies before the Merit Commission of the Office of the Secretary of State (Merit Commission). Plaintiffs did not seek review before the Merit Commission before filing their complaint. On January 7, 1999, the circuit court granted the motion to dismiss. Plaintiffs appeal, arguing they had no administrative remedy before the Merit Commission for the State's unwritten policy. We affirm.

According to their complaint, plaintiffs are officers of the Secretary of State Police. Manning is a sergeant, and the remaining plaintiffs are investigators. In the fall of 1997, Hitt, Fryman, and Zumwalt applied for positions with the Secretary of State Police as sergeants. Fryman and Manning applied for positions as lieutenants. All of the plaintiffs are veterans. Nonveterans were hired for each of the openings.

With their response to the motion to dismiss, plaintiffs filed affidavits from Manning, Fryman, and Hitt. Fryman and Hitt stated they are investigators with the Secretary of State Police and received an "A" grade in examinations for positions of "investigator sergeant." Fryman also received an "A" grade on the exam for "investigator lieutenant." In July 1997, Fryman applied for a position as investigator lieutenant, and he interviewed for the position on August 12, 1997.

Later that month, he was informed by Secretary of State Police Director Robert Howlett that a nonveteran had been selected for the position. According to Fryman's affidavit, Howlett told Fryman that the Secretary of State Police did not as a matter of practice use a veteran's preference in determining the applicant to fill the position.

In the fall of 1997, Fryman and Hitt applied for an opening for an investigator sergeant position with the Secretary of State Police. In November 1997, Fryman was informed a nonveteran had been hired for the position. Howlett again told Fryman that veteran's preferences are not used in filling this position. According to Fryman's affidavit, he attended a meeting on August 6, 1998, in which Howlett stated he knew the Secretary of State's system for advancement was invalid and that he was planning to hire some experts to develop a valid promotional exam. In the interim, Howlett stated, the Secretary of State was going to "pick whomever we want" without regard to the veteran's preference.

Hitt was never officially notified her application was rejected or why she did not get the job. Hitt stated that information put out by the Secretary of State in the fall of 1997 indicated the Department of Personnel of the Secretary of State considered the sergeant and lieutenant positions to be governed by the rules for new hires, and she was informed no eligibility lists were ever prepared for the positions.

Manning stated his application for promotion from sergeant to lieutenant had been denied twice, in July 1997 and April 1998. Manning filed a Freedom of Information Act (FOIA) (5 ILCS 140/1 *et seq.* (West 1998)) request seeking his examination data for his 1997 application. His request was denied by Scott Fawell, chief of staff of the Secretary of State. According to Fawell's letter, disclosure was not required under the FOIA because he was seeking a new position within the Secretary of State Police, and this is no different than any individual seeking employment (see 5 ILCS 140/7(1)(j) (West 1998) (examination data used to determine an applicant's qualifications need not be released under the FOIA)).

■ The Employment Code provides that veterans applying to positions with the Secretary of State are to be given a hiring preference. Where a grading system is used to evaluate applicants, veterans are to receive additional points. 15 ILCS 310/10b.7(c), (d) (West 1998). Where applicants are instead given general quality classifications, veterans are given an absolute preference over other applicants. 15 ILCS 310/10b.7(f) (West 1998); *cf. Denton v. Civil Service Comm'n*, 176 Ill. 2d 144, 679 N.E.2d 1234 (1997). Plaintiffs contend they were entitled to an absolute preference here.

■ The question for the court deciding a motion under section

2—619 is whether a genuine issue of material fact exists precluding dismissal or, absent an issue of material fact, whether dismissal is proper as a matter of law. A decision to grant a motion to dismiss is reviewed *de novo*. *Hopewell v. Vitullo*, 299 Ill. App. 3d 513, 516, 701 N.E.2d 99, 101 (1998).

■ The Secretary's motion to dismiss was granted because plaintiffs failed to exhaust administrative remedies. The general rule under the Administrative Review Law (Review Law) (735 ILCS 5/3—101 through 3—113 (West 1998)) is that a party aggrieved by an agency action must pursue all available administrative remedies before seeking judicial review. *Phillips v. Graham*, 86 Ill. 2d 274, 289, 427 N.E.2d 550, 557 (1981). This is true of declaratory judgment actions. *Dudley v. Board of Education, Bellwood School District No. 88*, 260 Ill. App. 3d 1100, 1106, 632 N.E.2d 94, 99 (1994). However, if plaintiffs had no right to an administrative process in which to raise their complaint, they were not required to exhaust administrative remedies. See *Hampson v. Board of Education*, 215 Ill. App. 3d 817, 827, 576 N.E.2d 54, 60 (1991). The primary issue on appeal is whether plaintiffs had an administrative avenue for their complaint before the Merit Commission.

■ The Illinois Administrative Code (Administrative Code) clearly provides for administrative review of plaintiffs' claim that the Merit Commission failed to consider veteran's preferences in filling the newly created sergeant and lieutenant positions. 80 Ill. Adm. Code § 50.140 (1996). The Administrative Code provides:

> "A certified employee who believes that a personnel transaction has been falsely labeled in an attempt to deprive the Commission of its lawful jurisdiction, or who believes that a personnel transaction adversely affecting him violates either the [Employment] Code or the Personnel Rules, may within a period of 15 calendar days after receiving actual notice of such violation or falsely labeled transaction appeal in writing to the Commission." 80 Ill. Adm. Code § 50.100(a) (1996).

A certified employee is an employee who has successfully completed an appointment and a required probationary period of six months immediately following an original appointment or reinstatement or three months following a promotion. 80 Ill. Adm. Code § 420.10 (1996) ("Certified Employee," "Probationary Period"). Plaintiffs argue section 50.150 of Title 80 cannot apply to them, even though they happen to be certified in their current positions, because they are not certified in the positions for which they are applying. However, Title 80, sections 50.100(a) and 50.140, does not require that the complainant would be certified had the personnel transaction at issue proceeded

differently. We note also that the Employment Code provides the procedure concerning promotions under that code where certified employees who have been promoted and fail to satisfactorily complete the probationary period are returned to the class and status from which they were promoted. 80 Ill. Adm. Code § 420.370(d)(1) (1996).

Plaintiffs argue that, even if the Administrative Code provides for an administrative hearing, hearings should not be allowed because they are not authorized by statute. See *Robinson v. Human Rights Comm'n*, 201 Ill. App. 3d 722, 726-27, 559 N.E.2d 229, 231-32 (1990) (agency has no authority except that conferred by statute).

■ The duties and powers of the Merit Commission are set forth in section 8c of the Employment Code, which provides, in pertinent part:

"The Merit Commission, in addition to any other duties prescribed in this Act, shall have the following duties and powers:

\* \* \*

(5) To hear appeals of employees who do not accept the allocation of their positions under the classification plan.

(6) To hear and approve or disapprove written charges filed seeking the discharge or demotion of employees or suspension totaling more than 30 calendar days in any 12 month period, as provided in Section 9, appeals as provided in Section 9a of this Act, and appeals from transfers from one geographical area in the state to another, and in connection therewith to administer oaths, subpoena witnesses and compel the production of books and papers.

\* \* \*

(9) If any violation of this Act is found, the Commission shall direct compliance in writing.

(10) To appoint such employees, experts and special assistants as may be necessary to carry out the powers and duties of the commission under this Act. \*\*\*

(11) To promulgate rules and regulations necessary to carry out and implement their powers and duties under this Act, with authority to amend such rules from time to time pursuant to The Illinois Administrative Procedure Act.

(12) Within one year of the effective date of this amendatory Act of 1985, the Commission shall adopt rules and regulations which shall include all Commission policies implementing its duties under Sections 8, 9, 10 and 15 of this Act. These rules and regulations shall include, but not be limited to, the standards and criteria used by the Commission and Hearing Officers in making discretionary determinations during hearing procedures.

(13) To hear or conduct investigations as it deems necessary of appeals of layoff filed by employees appointed under Jurisdiction B

after examination, provided that such appeals are filed within 15 calendar days following the effective date of such layoff and are made on the basis that the provisions of the Secretary of State Merit Employment Code or the rules promulgated thereunder have been violated or have not been complied with." 15 ILCS 310/8c (West 1998).

Though the Employment Code specifically defines "promotions" (which includes advancement in rank or grade to a vacant position) (15 ILCS 310/10b.2 (West 1998)), it does not specifically provide for a hearing for grievances arising from promotion decisions. Section 9 of the Employment Code provides for hearings and written charges when a certified officer or certain employees are "removed, discharged or demoted, or suspended for a period of more than 30 calendar days." 15 ILCS 310/9 (West 1998). It does not provide for hearings over complaints for promotions to a new position.

Nonetheless, we agree with the circuit court that administrative review is implied by the general structure of the Code. Section 8c(9) of the Employment Code provides the Merit Commission may direct compliance with the Employment Code, in writing, when a violation is found. 15 ILCS 310/8c(9) (West 1998). Section 8c(11) authorizes the Merit Commission to promulgate rules and regulations, and section 8c(12) of the Employment Code provides for the Merit Commission to adopt rules and regulations to implement its duties under section 10 of the Employment Code. 15 ILCS 310/8c(11), (12) (West 1998). The relevant statutory provisions are found in section 10. See 15 ILCS 310/10b.3 (West 1998) (providing for creation of eligibility list); 15 ILCS 310/10b.7 (West 1998) (providing for veteran's preference in entrance examinations); 15 ILCS 310/10b.2 (West 1998) (defining a promotion to include an advancement in rank or grade to a vacant position).

Plaintiffs contend the Merit Commission's authority to hear appeals is limited to those cases specifically mentioned in section 8c. However, the list of duties in that section is not exhaustive. See 15 ILCS 310/8c (West 1998) (the list applies "in addition to any other duties prescribed" by the Employment Code). Moreover, if the Merit Commission's authority were limited to those duties specifically mentioned in section 8c, section 8c(9), with its general grant of authority to direct compliance with the Employment Code, would be rendered superfluous (15 ILCS 310/8c(9) (West 1998)). If possible, statutes should be construed so that no term is rendered superfluous or meaningless. See *Niven v. Siqueira*, 109 Ill. 2d 357, 365-66, 487 N.E.2d 937, 942 (1985).

In *Denton*, 176 Ill. 2d 144, 679 N.E.2d 1234, a job applicant sued

when he was denied a position because of the employer's construction of an analogous veteran's preference in the Personnel Code (Ill. Rev. Stat. 1991, ch. 127, par. 63b108b.7 (now 20 ILCS 415/8b.7 (West 1998))). Complaints under the Personnel Code are first decided by the Civil Service Commission, an administrative body whose duties are defined to be almost identical to those of the Merit Commission (compare 15 ILCS 310/8c (West 1998), with 20 ILCS 415/10 (West 1998)). Though the Personnel Code defines several specific cases that are to be reviewed by the Civil Service Commission, it does not explicitly allow the Civil Service Commission to hear cases involving a failure to hire. 20 ILCS 415/10 (West 1998). However, the suit went before the Civil Service Commission, presumably because of the provision allowing the Civil Service Commission to direct compliance with the Personnel Code. 20 ILCS 415/10(9) (West 1998).

The Merit Commission had the statutory and regulatory authority to conduct a hearing on plaintiffs' claims. Therefore, the circuit court properly dismissed the claims because plaintiffs failed to exhaust administrative remedies.

For all of the above reasons, we affirm.

Affirmed.

KNECHT, P.J., and COOK, J., concur.