THE DEPARTMENT OF REVENUE *et al.*, Plaintiffs-Appellants, v. THE CIVIL SERVICE COMMISSION *et al.*, Defendants-Appellees.

First District (5th Division) No. 1—04—0593

Opinion filed April 8, 2005.

CAMPBELL, P.J., dissenting.

Winston & Strawn, L.L.P., of Chicago (Michael Brody, Ivan Poullaos, and Josh Goldberg, of counsel), and Posegate & Denes, P.C., of Springfield (Carol Posegate, of counsel), for appellants.

Kulwin & Associates, L.L.C., of Chicago (Shelly B. Kulwin and Jeffrey R. Kulwin, of counsel), for appellee Flora Ciarlo.

Drake, Narup & Mead, P.C., of Springfield (Richard H. Narup and Christian D. Biswell, of counsel), for appellees Fred Kimble, Jeffrey Fulgenzi, and Linda Lebegue.

Donald M. Craven, P.C., of Springfield (Donald M. Craven, of counsel), for appellees Michael Murphy and Jerry Turnbull.

Law Office of Leonard A. Sherman, of Chicago (Leonard A. Sherman, of counsel), for appellees Madelynne Brown and Sarah Vega.

Kerley & Associates, P.C., of Springfield (John E. Kerley, of counsel), for other appellees.

JUSTICE GALLAGHER delivered the opinion of the court:

This appeal challenges the Illinois Civil Service Commission's reinstatement of 27 state employees to four-year term positions in government jobs to which they were appointed in the final months of former Governor George Ryan's administration. The plaintiffs now appealing are the 13 state agencies to which the defendant employees received four-year term appointments beginning in fall 2002. We agree with plaintiffs that the Commission lacked subject matter jurisdiction over the cases of 20 of the 27 defendant employees. Accordingly, we vacate the Commission's order reinstating those 20 employees to their government positions. As to the remaining seven employees, we find

that although the Commission had jurisdiction over their terminations, the rule changes authorizing the term positions, promulgated by the Department of Central Management Services (CMS) under Ryan's administration, were void *ab initio* because they contradicted the Illinois Personnel Code (20 ILCS 415/1 *et seq.* (West 2000)). Therefore, we reverse the Commission's order reinstating those seven employees to their state positions.

## BACKGROUND

In January and February 2003, Governor Rod Blagojevich fired approximately 60 employees who were appointed by the Ryan administration in 2002 to four-year terms in state government jobs. Most of those positions carried the job title of "senior public service administrator." Among the employees given term appointments near the end of Governor Ryan's term were his press spokesman and his deputy chief of staff. Although a number of the employees had lengthy careers in Illinois government and had received favorable performance evaluations and promotions, the record indicates that several of the defendant employees had little or no experience in the area of their term appointment.

### 1. Hiring Procedures under Personnel Code

To discuss the actions taken by the Ryan administration, it is necessary to review the pertinent provisions of the Personnel Code and the procedures for passing administrative rules under that statute. The Personnel Code establishes for state government "a system of personnel administration under the Governor, based on merit principles and scientific methods." 20 ILCS 415/2 (West 2000). The Code is administered by CMS and establishes, *inter alia*, the five-member Civil Service Commission. 20 ILCS 415/3, 7a (West 2000).

Employees subject to the Personnel Code are hired from eligibility lists compiled on the basis of competitive examinations. 20 ILCS 415/8b.1, 8b.3 (West 2000). The Personnel Code requires testing to determine if applicants are qualified for certain positions and, if so, to assess an applicant's fitness relative to other candidates. 20 ILCS 415/8, 8b.1 (West 2000). Qualified candidates are ranked by relative merit, and appointments are made from among the three highest candidates on the appropriate eligibility list or from the highest ranking group if candidates are listed by ranking as opposed to numerical rating. 20 ILCS 415/8b.5 (West 2000). Veterans are given first preference in this appointment process. 20 ILCS 415/8b.7 (West 2000).

The Personnel Code states that hired employees are subject to a probationary period "not to exceed one year," after which the employee's appointment or promotion is complete. 20 ILCS 415/8b.6

(West 2000). The Commission can review the termination of an employee who has been "appointed under the rules and after examination." 20 ILCS 415/11 (West 2000).

## 2. Overview of Administrative Rulemaking

Although the Illinois General Assembly holds the general legislative power to determine what the law shall be, the legislature can delegate to an administrative agency the authority to execute the law. M. Barker, *An Overview of Administrative Law*, in Illinois Administrative Law § 1.2 (Ill. Inst. for Cont. Legal Educ. 1991). The rationale behind such delegation is that the legislature cannot address each particular case and that administrative agencies develop expertise in their respective fields. M. Barker, *An Overview of Administrative Law*, in Illinois Administrative Law § 1.3 (Ill. Inst. for Cont. Legal Educ. 1991). The rules and regulations that state agencies promulgate under their respective enabling statutes are passed in accordance with the Illinois Administrative Procedure Act (5 ILCS 100/1—1 *et seq.* (West 2000)) and are compiled in the Administrative Code.

Administrative rulemaking is a three-step procedure, with each step documented in the Illinois Register, a weekly publication of the Secretary of State's Administrative Code Division. M. Barker, *An Overview of Administrative Law*, in Illinois Administrative Law § 1.6 (Ill. Inst. for Cont. Legal Educ. 1991). First, the agency gives notice of a proposed rule, indicating the statute upon which the proposed rule is based and authorized and including a "complete description of the subjects and issues involved." 5 ILCS 100/5—40(b)(3) (West 2000). At this stage, known as the "first notice" period, members of the public can comment and request a public hearing. 5 ILCS 100/5—40(b)(5) (West 2000). At the end of the first notice period, the agency submits the proposal and additional information to the Joint Committee on Administrative Rules (JCAR), a bipartisan, bicameral legislative support services agency composed of members of the General Assembly. 5 ILCS 100/5—90 (West 2000).

When notice to JCAR is complete, the second step of the administrative rulemaking process begins, known as the legislative review period or the "second notice" period. During this stage, JCAR reviews the second notice and can file a certification of no objection to the proposed rule or a statement objecting to or prohibiting the filing of the proposed rule. 1 Ill. Adm. Code § 220.1000 (1994). JCAR also can recommend that the agency pursue further action.

The third and final step in the administrative rulemaking process is the rule's adoption. If the agency has received a certification of no objection from JCAR or has responded to a statement of objection

from JCAR, the agency may file the proposed rulemaking for adoption. 1 Ill. Adm. Code § 220.1100 (1994). If the agency has refused to modify a proposed rule, the agency must notify JCAR in writing of that response and submit a notice of refusal to meet the committee's objection for publication in the Illinois Register. R. Kane, *Specific Rulemaking Procedures in Illinois*, in Illinois Administrative Law § 5.31 (Ill. Inst. for Cont. Legal Educ. 1991) (noting that JCAR "routinely introduces legislation based on an agency's refusal to meet objections").

### 3. Amendments Proposed by CMS in 2002 Under Ryan Administration

CMS is the administrative agency charged with making rules to effectuate the Personnel Code's general provisions. 20 ILCS 415/8 (West 2000). In July 2002, CMS gave first notice of its proposals to amend the Administrative Code. In describing the "subjects and issues involved," the notice stated:

> "During the next few months, vacancies will occur as a result of the recently enacted early retirement legislation. Because of a concern that State government continue to operate efficiently and provide necessary services, there may be a need to fill some critical positions quickly to account for the substantial loss of experience and expertise. The proposed amendments are intended to accommodate this need by providing more flexibility in the process for filling these positions." 26 Ill. Reg. 10084 (July 12, 2002).

The suggested amendments allowed term appointments to be made at the discretion of the director of the department, board or commission, without reference to eligibility lists, provided that the appointee was "qualified" and the position was determined by the director of CMS to be exempt from the requirements of *Rutan v. Republican Party of Illinois*, 497 U.S. 62, 111 L. Ed. 2d 52, 110 S. Ct. 2729 (1990).[1] 26 Ill. Reg. 10093 (July 12, 2002).

The probationary period under the existing rules was either four

---

[1]A *Rutan*-exempt position is one for which the government can consider an applicant's party affiliation in making a hiring decision. In *Rutan*, the United States Supreme Court held that hiring employees based on their political patronage is unconstitutional except where narrowly tailored to further a vital government interest. *Rutan*, 497 U.S. at 74, 111 L. Ed. 2d at 66, 110 S. Ct. at 2736. *Rutan* has been interpreted to allow the hiring of policymakers and "inner-circle" employees based on political affiliation. *Elrod v. Burns*, 427 U.S. 347, 367-68, 49 L. Ed. 2d 547, 562, 96 S. Ct. 2673, 2687 (1976); see also *Rutan*, 497 U.S. at 90, 111 L. Ed. 2d at 77, 110 S. Ct. at 2745 (Stevens, J., concurring) (political affiliation can be "relevant to [an] employee's ability to function effectively as part of a given administration").

months or six months, depending on the circumstances of the employee's hiring. 80 Ill. Adm. Code §§ 302.300(a), (b) (2000). The proposed rules reduced the probationary period to 30 days for employees who "immediately prior to the appointment" had "served the State as a full time employee, continuously, for a minimum of 2 years." 26 Ill. Reg. 10092 (July 12, 2002).

During the second notice period, JCAR objected to the proposed rules, noting that CMS "has not provided adequate justification and rationale for the proposed rulemaking and for departing from existing personnel policies." 26 Ill. Reg. 14290 (September 27, 2002). JCAR pointed out that the proposed amendments would "abandon" the use of candidate lists for term appointments and would delegate CMS authority to agency directors in making term appointments. JCAR stated that the proposed rules constituted

> "the extraordinary action of long term measures to address possible, unknown, short term needs by appointing permanent and/or 4 year term appointees to address temporary management shortfalls when interim replacements could be designated from within existing agency ranks or obtained on an emergency, temporary or provisional basis pursuant to the Personnel Code." 26 Ill. Reg. 14290 (September 27, 2002).

CMS responded to the latter concern as follows:

> "An extraordinary number of vacancies are anticipated in this time of transition, due in large part to the early retirement legislation. While emergency, temporary or provisional appointments can be made currently, this new rulemaking will provide more flexibility and additional incentives to help agencies fill these vacancies and ensure that necessary State services are not interrupted." 26 Ill. Reg. 15328-29 (October 25, 2002).

CMS also responded that the 30-day probationary period was within the Personnel Code's requirement that probation not exceed one year (20 ILCS 415/8b.6 (West 2000)). 26 Ill. Reg. 15328 (October 25, 2002). As to the abandonment of eligibility lists, CMS responded that under the proposed rules, individuals appointed to *Rutan*-exempt term positions must be "qualified" and that "it is anticipated that agency directors will determine qualifications by following the same procedures that are used currently by CMS." 26 Ill. Reg. 15329 (October 25, 2002).

An agency may file a proposed rulemaking for adoption, the third and final step in the process, only if it has responded to a statement of objection from JCAR. 1 Ill. Adm. Code § 220.1100 (1994). According to the "Notice of Adopted Amendments," CMS's response to JCAR's objections was submitted on September 30, 2002. 26 Ill. Reg. 15285

(October 25, 2002). The October 25, 2002, issue of the Illinois Register, which offered published notice of CMS's response to JCAR's objection to the proposed amendments, also included the notice that those amendments had been adopted and were effective on October 15, 2002. 26 Ill. Reg. 15285 (October 25, 2002). The notice indicates that no difference existed between the proposed rules and the adopted amendments, and it states that "no changes were necessary." 26 Ill. Reg. 15285 (October 25, 2002).[2]

On October 16, 2002, the day after the amendments' published effective date, Deborah Hensey, the manager of the Bureau of Personnel of CMS, informed agency heads and agency personnel managers in writing that the revised rules would "require changes in personnel procedure."

### 4. Actions of Ryan and Blagojevich Administrations After October 15 Amendments

Governor Ryan had announced in August 2001 that he would not run for reelection in November 2002. During their campaigns for governor, Blagojevich and his opponent, Jim Ryan, both publicly criticized the October 15 amendments.

Blagojevich was elected in November 2002 and took office in January 2003. On January 15, 2003, the Governor's chief of staff, Alonzo Monk, advised all state agencies and departments that the October 15 amendments were "legal nullities" and ordered the director of each department to review all appointments made on or after July 10, 2002, including promotions, lateral hires and voluntary reductions. Each department was ordered to report the salary, title, job description and other pertinent employment information regarding any such appointment to the Governor's office by January 17, 2003. Following that survey, in January and February 2003, Monk informed each of the defendant employees in writing that his or her employment was terminated.

### 5. Decisions of the Commission and the Circuit Court of Cook County

More than 40 of the approximately 60 terminated employees appealed their dismissals to the Commission. In their brief to this court, plaintiffs indicate that approximately 13 of those terminated employees: (1) were rehired by the State after reapplying for their jobs under the Personnel Code provisions as they read before the October

---

[2]The opinions of JCAR are not binding on administrative agencies. *Central Illinois Public Service Co. v. Illinois Commerce Comm'n*, 268 Ill. App. 3d 471, 482, 644 N.E.2d 817, 825 (1994).

15 amendments, *i.e.*, with competition from an eligibility list and a four- to six-month probationary period; or (2) did not pursue their claims because they obtained employment elsewhere or for some other reason.

The appeals of 27 employees proceeded before the Commission. The plaintiff agencies moved to dismiss the appeals, arguing that the Commission lacked subject matter jurisdiction because the workers were not "appointed under the rules and after examination" as required by section 11 of the Personnel Code (20 ILCS 415/11 (West 2000)). The administrative law judge (ALJ) recommended that plaintiffs' motion to dismiss be denied and determined, in a six-page written decision, that the Commission should decide the appeals under the presumption that the amendments "are proper and were properly promulgated." The ALJ further stated that "the cases turn primarily on questions of law."

On September 18, 2003, the five-member Commission issued a one-page decision, stating in its entirety:

> "The undersigned, having read the decision of the administrative law judge, hereby adopt said decision and hereby certify it to the director of the Department of Central Management Services, State of Illinois, for enforcement.
>
> The [employees] are to be reinstated in their respective positions they occupied at the time of their discharge and are to receive full compensation in accordance with the Personnel Code. This is a final administrative order subject to the Administrative Review Act."

The decision was approved by three members of the Commission, with two members dissenting.

On September 29, 2003, the plaintiff agencies filed a complaint for administrative review in the circuit court of Cook County, challenging the Commission's decision. Plaintiffs alleged that the defendant employees were political appointees of the Ryan administration who previously had jobs from which they could be discharged at will by the incoming governor and that the employees were selected for "senior positions in Illinois government known as term appointments." On February 27, 2004, the circuit court issued a three-line written order affirming the Commission's decision and ordering that the employees "be reinstated in their respective positions they occupied at the time of their discharge."

## ANALYSIS

### 1. Standard of Review

Initially, the parties disagree as to the appropriate standard of

review. Plaintiffs assert that the issues of the Commission's jurisdiction and the validity of the October 15 amendments are legal questions to be reviewed *de novo*. In response, defendants refer to the standards used to review factual findings and mixed questions of law and fact, and they argue that factual findings of an administrative agency are presumed to be correct and are reviewed under a manifest weight of the evidence standard.

■ Although an administrative agency's findings of fact are presumed *prima facie* true and correct (*County of Cook v. Illinois Local Labor Relations Board*, 302 Ill. App. 3d 682, 686, 707 N.E.2d 176, 179 (1998)), the various propositions offered by defendants are inapplicable here. The ALJ acknowledged that this case involved questions of law and presumed the October 15 amendments' validity. The Commission then adopted the ALJ's decision and reinstated the employees to their positions, and the circuit court summarily affirmed the Commission's ruling. Whether the Commission has subject matter jurisdiction to hear the employees' cases is a question of law to be reviewed by this court *de novo*. See *Spiel v. Property Tax Appeal Board*, 309 Ill. App. 3d 373, 377, 722 N.E.2d 306, 309 (1999). Given the procedural history of this case and the nature of the issues presented to this court, the appropriate standard of review is *de novo*. Moreover, our task is to review the decision of the administrative agency, not the judgment of the trial court. *Alm v. Lincolnshire Police Pension Board*, 352 Ill. App. 3d 595, 598, 816 N.E.2d 389, 391 (2004).

## 2. Jurisdiction of the Commission

■ Plaintiffs contend that under the Personnel Code, the Commission reviews the termination of employees who were "appointed under the rules and after examination." See 20 ILCS 415/11 (West 2000). They point out that the civil service system is intended to protect employees who have competed for their jobs through merit selection and that, in turn, the Commission reviews the termination of employees who have undergone that process to insure that competitively selected workers are discharged or disciplined only for cause.

Plaintiffs assert that 20 of the 27 employees were not appointed from eligibility lists (Backfield, Barrow, Brown, Ciarlo, Cole, Hampton, Harmeyer, Kimble, Madigan, Messina, Murphy, Narup, Overaker, Trees, Urbanek, Vega, Vespa, Williams, Woodward and Wyatt), thereby circumventing the requirements of appointment "after examination" that is necessary to invoke the Commission's jurisdiction.

Defendants do not assert that those 20 employees were appointed from eligibility lists. Therefore, since those 20 employees were not appointed under the rules and after examination, we conclude that the

Commission lacked subject matter jurisdiction over their cases, and we vacate the Commission's order reinstating those employees to their state positions.

Turning to the remaining seven employees (Booker, Dutton, Fulgenzi, LeBegue, Nelson, Parker and Turnbull), plaintiffs refer to them as "reinstatement" employees who previously had been appointed from eligibility lists, completed their probationary periods with the State, and were "returning to the merit and fitness system after serving in various political positions" when they were offered term positions in the fall of 2002. Plaintiffs do not contest the Commission's jurisdiction over those seven employees. Rather, plaintiffs contend that, as to those defendants, this court should determine whether the October 15 amendments were valid.

### 3. The October 15 Amendments

Plaintiffs assert that by removing the requirements of competitive examinations and eligibility lists, the October 15 amendments conflict with the Personnel Code's provisions that mandate those procedures, and, therefore, the amendments were void *ab initio.* They also argue that the October 15 amendments reduced the probationary period from either 4 months or 6 months to 30 days, thus precluding any meaningful performance review because CMS regulations do not require an employee evaluation until 90 days after the employee's appointment.

#### a. *The Amendments' Promulgation*

At the outset, we note that plaintiffs argued to the ALJ and the circuit court that CMS did not submit the proposed rules to the Commission, as the Personnel Code requires. See 20 ILCS 415/8 (West 2000) (stating that CMS director "shall prepare and submit to the Civil Service Commission proposed rules for all positions and employees subject to this Act"). In this appeal, defendants contend that plaintiffs have waived those arguments or any other assertions as to the procedure used to pass the amendments by failing to raise them to this court. Defendants previously responded that that practice had not been followed for several years and that publication of rule changes in the Illinois Register had since superseded the previous method.

Defendants are correct that plaintiffs have now focused on the amendments' substance and have not challenged the validity of the procedure by which they were promulgated. However, this court would be shortsighted not to observe that the amendments were passed swiftly and with an inexplicable dismissal of the objections voiced by JCAR. During the second notice period, JCAR reported that CMS did not provide "adequate justification and rationale" for "departing from

existing personnel policies," and the committee referred to the use of term appointments as an "extraordinary action of long term measures to address possible, unknown, short term needs." 26 Ill. Reg. 14290 (September 27, 2002).[3] Although CMS responded to JCAR's statement of objection to the proposed rulemaking, CMS did not submit for publication its notice of refusal to meet JCAR's objections. See R. Kane, *Specific Rulemaking Procedures in Illinois,* in Illinois Administrative Law § 5.31 (Ill. Inst. for Cont. Legal Educ. 1991) (if an agency has refused to modify a proposed rule, the agency must notify JCAR in writing of that response and submit a notice of refusal to meet the committee's objection for publication in the Illinois Register).

In any event, the published notice of CMS's response to JCAR's objections did not appear in the Illinois Register until 10 days after the amendments took effect and approximately 9 days after the Ryan administration began to use the amendments to effectuate the employees' four-year term appointments. See 26 Ill. Reg. 15285 (October 25, 2002). Although the recommendations of JCAR were not binding on CMS, JCAR's acquiescence to the adoption of the amendments in unaltered form represented a remarkable change of course from its initial opposition to most, if not all, of the amendments' content. Unfortunately, the process that led to the amendments' adoption in the same form that initially had prompted JCAR's vehement objection is *dehors* the record.

### b. *The Amendments' Substantive Validity*

■ An administrative agency possesses no inherent or common law powers, and any authority that the agency claims must find its source within the provisions of the statute by which the agency was created. *Illinois Local Labor Relations Board,* 302 Ill. App. 3d at 686-87, 707 N.E.2d at 179. Accordingly, the authority of an administrative agency to adopt rules and regulations is defined by the statute creating that authority, and such rules and regulations must be in accord with the standards and policies set forth in the statute. *Gunia v. Cook County Sheriff's Merit Board,* 211 Ill. App. 3d 761, 769, 570 N.E.2d 653, 658 (1991); *Popejoy v. Zagel,* 115 Ill. App. 3d 9, 11, 449 N.E.2d 1373, 1374 (1983). Properly promulgated administrative regulations have the force and effect of law. *Applegate v. Department of Transportation,* 335 Ill. App. 3d 1056, 1063-64, 783 N.E.2d 96, 103 (2002).

---

[3]The minutes from the September 10, 2002, meeting of JCAR indicate that the nine members discussed the committee's ability to submit a statement prohibiting the filing of the proposed rules. Seven votes were required to approve such a motion. Five members of JCAR voted in favor of prohibiting the rules' filing, and four JCAR members opposed the prohibition.

However, an administrative body cannot extend or alter the enabling statute's operation by the exercise of its rulemaking powers. *Popejoy*, 115 Ill. App. 3d at 11, 449 N.E.2d at 1375; see also *Glenn v. City of Chicago*, 256 Ill. App. 3d 825, 831, 628 N.E.2d 844, 848 (1993) (noting that civil service commission must exercise powers "in subordination to those rules established by the legislature"). If an agency promulgates rules that are beyond the scope of the legislative grant of authority or that conflict with the statute, the rules are invalid. *R.L. Polk & Co. v. Ryan*, 296 Ill. App. 3d 132, 141, 694 N.E.2d 1027, 1034 (1998).

Plaintiffs contend that the October 15 amendments were void *ab initio* because by omitting the required examinations and eligibility lists, the amendments conflict with the Personnel Code's provisions that mandate those procedures. Plaintiffs assert that sections 8b.18 and 8b.19 are subsections of section 8b, which requires CMS to promulgate rules regarding employees' selection based on merit and fitness, and that all of those sections are under the larger umbrella of section 8. They argue that the rules contained in section 8b pertain to term appointees as they do to other state employees who are subject to the merit and fitness provisions.

Defendants respond that term appointments are governed by sections 8b.18 and 8b.19 of the Personnel Code and that the remainder of section 8b does not apply to those positions.

The pertinent Personnel Code sections, from the general to the more specific, provide:

"§ 8. Rules. The Director of Central Management Services shall prepare and submit to the Civil Service Commission proposed rules for all positions and employees subject to this Act. ***

The rules and amendments thereto shall provide: ***." 20 ILCS 415/8 (West 2000).

Section 8a, titled "Jurisdiction A—Classification and pay," requires CMS to promulgate rules as to the classification of positions and their pay. 20 ILCS 415/8a (West 2000). Those rules are found in subsections 8a.1 and 8a.2 of the Personnel Code. 20 ILCS 415/8a.1, 8a.2 (West 2000). Section 8c, titled "Jurisdiction C; conditions of employment," enables CMS to formulate rules regarding a plan to address employee complaints and grievances. 20 ILCS 415/8c (West 2000).

Section 8b provides, in relevant part:

"§ 8b. Jurisdiction B—Merit and fitness. (a) For positions in the State service subject to the jurisdiction of the Department of Central Management Services with respect to selection and tenure on the basis of merit and fitness, those matters specified in this

Section and Sections 8b.1 through 8b.17." 20 ILCS 415/8b(a) (West 2000).

Sections 8b.1 through 8b.17 require CMS to promulgate rules as to competitive examinations, promotions, eligibility lists, probationary periods, preference for veterans, emergency and temporary appointments, reinstatements, layoffs, performance reviews, disciplinary actions, discharge and demotion, among other subjects. 20 ILCS 415/8b.1 through 8b.17 (West 2000).

Sections 8b.18 and 8b.19, both titled "Term Appointments," do not begin with the same introductory language ("For . . . ") as do section 8b(a) and sections 8b.1 through 8b.17. Sections 8b(a) and 8b.1 through 8b.17 provide predicates to the subject language in section 8 that the rules and amendments proposed by CMS "shall provide." The gist of defendants' argument is that sections 8b.18 and 8b.19, addressing term appointments, are independent provisions that do not fall under the umbrella of section 8b, unlike sections 8b.1 through 8b.17, and that, therefore, the rules as to term appointments that conflict with the larger group of merit- and fitness-related provisions of section 8b are not invalid.

Defendants also argue that although the Personnel Code once treated term appointments and other employee classifications comparably, sections 8b.18 and 8b.19 indicate that employees given term appointments after January 1, 1980, are to be appointed without reference to the merit and fitness requirements of sections 8b.1 through 8b.17. Defendants assert that because section 8b.18 "is silent as to the specifics of the appointment process," CMS can provide those details by rule, and they contend that CMS established that procedure in the October 15 amendments.

Several flaws in defendants' position are immediately apparent. First, because defendants assert that the language in section 8 enabling CMS to propose rules extends to sections 8b.18 and 8b.19 to provide specific provisions for term appointments, they cannot also logically argue that sections 8b.18 and 8b.19 are independent of the broader merit and fitness provisions of section 8b. Sections 8a, 8b and 8c each are subparts of section 8 addressing different areas of CMS' rulemaking powers.

Moreover, defendants' contention that the eligibility list provision and other merit and fitness requirements of section 8b did not apply to sections 8b.18 and 8b.19 is belied by the fact that CMS sought to change the administrative rules pertaining to term appointments to "provide more flexibility *** to help agencies fill these vacancies." 26 Ill. Reg. 15329 (October 25, 2002). In initially opposing the amendments, JCAR noted that the proposed amendments would remove the

use of eligibility lists in making term appointments. In its response to those objections, CMS did not challenge that representation, instead stating that agency directors would "determine qualifications" using the same procedures as used previously. 26 Ill. Reg. 15329 (October 25, 2002). If, as defendants now argue, the Personnel Code's merit and fitness provisions are unrelated to the provisions pertaining to term appointments, there would have been no need to seek the amendment of those provisions.

Second, defendants' argument that sections 8b.1 through 8b.17 do not apply to term appointments is inconsistent with their assertion that section 8b.6 pertains to term appointments. Plaintiffs assert that the October 15 amendments' reduction of the probationary period to 30 days for term appointees precludes any meaningful performance review because CMS regulations do not require an employee evaluation until 90 days after the employee's appointment, meaning that an employee's 30-day probation would end before he or she received an evaluation. See 80 Ill. Adm. Code § 302.270 (2002). Defendants have responded that the amendments do not contradict the applicable probationary period because section 8b.6 does not state a minimum period of probation; it simply provides that probation cannot exceed one year. See 20 ILCS 415/8b.6 (West 2000).[4] Defendants argue that a 30-day probationary period is reasonable for term appointees who had previously served as state employees exempt from the merit- and fitness-related provisions of section 8b. However, defendants cannot contend that sections 8b.18 and 8b.19 are unrelated to the merit and fitness requirements of section 8b.1 through 8b.17 and, at the same time, argue that section 8b.6 applies to term appointments.

Moreover, defendants' contention that the October 15 amendments provided "the specifics" of term appointments under sections 8b.18 and 8b.19 "by rule" implies that no procedures for term appointments existed before October 15, 2002. Statutes should be construed, if possible, so that no portion is rendered superfluous or meaningless. *Hitt v. Ryan*, 307 Ill. App. 3d 344, 349, 718 N.E.2d 695, 700 (1999). Defendants' argument suggests that sections 8b.18 and 8b.19 were dormant until the passage of the October 15 amendments.

Construing the statute in its entirety, as we are required to do, section 8 of the Personnel Code involves the promulgation of rules for state employment based on merit and fitness. See *Perez v. Civil Service*

---

[4]Effective November 19, 2003, the Illinois legislature amended section 8b.6 to increase the minimum probationary period for individuals serving term appointments from the 30 days allowed by the October 15 amendments to "not less than 6 months." 20 ILCS 415/8b.6 (West Supp. 2003).

*Comm'n*, 153 Ill. App. 3d 176, 180, 505 N.E.2d 1067, 1070 (1987) (Personnel Code's purpose "is to establish a system of personnel administration based on merit"). Because term appointments are subject to the merit and fitness requirements outlined in sections 8b.1 through 8b.17 of the Personnel Code, the October 15 amendments to the Illinois Administrative Code contradicted their enabling statute by removing the eligibility list requirement and a meaningful probationary period for employees who were given term appointments.

■ Rules that conflict with the statutory language under which they were adopted are invalid. *R.L. Polk & Co.*, 296 Ill. App. 3d at 141, 694 N.E.2d at 1034. Because the October 15 amendments conflict with the language of the Personnel Code, the amendments are void *ab initio*. Therefore, the state of the law is as if the amendments were never passed. *In re G.O.*, 191 Ill. 2d 37, 43, 727 N.E.2d 1003, 1007 (2000). When the defendant employees were discharged, they were within the probationary period in effect previously, which was either four months or six months. 80 Ill. Adm. Code §§ 302.300(a), (b) (2000). Accordingly, the defendant employees were subject to termination at will by the incoming administration. See, *e.g.*, *Vanko v. Sheahan*, 278 Ill. App. 3d 302, 303, 662 N.E.2d 512, 514 (1996) (involving discharge of deputy sheriff and applicability of sheriff's merit system act). Therefore, the Commission's order reinstating defendants Booker, Dutton, Fulgenzi, LeBegue, Nelson, Parker and Turnbull to state employment is reversed.

### 4. Timeliness of the Commission's Hearings and Decision

■ Defendants next assert that the Commission failed to grant hearings in their cases within 30 days or render decisions within 60 days as required by section 11 of the Personnel Code (20 ILCS 415/11 (West 2000)). Because we have found that the Commission lacked jurisdiction over 20 of the employees, we need not address these arguments as to those 20 defendants. However, because the Commission had jurisdiction over defendants Booker, Dutton, Fulgenzi, LeBegue, Nelson, Parker and Turnbull, it is necessary to consider the timeliness of the Commission's actions in their cases.

■ If an employee requests a hearing before the Commission, the Commission shall "grant a hearing within 30 days" of the filing of such a request and the Commission's "finding and decision *** shall be rendered within 60 days after the receipt of the transcript of the proceedings." 20 ILCS 415/11 (West 2000). If the Commission does not commence a hearing within 30 days, it loses jurisdiction over the employee's case. *Winkler v. Department of Public Aid*, 114 Ill. App. 3d 133, 135, 448 N.E.2d 266, 268 (1983). If the Commission's finding and

decision are not rendered within the 60-day period, "the employee shall be considered to be reinstated and shall receive full compensation for the period for which he was suspended." 20 ILCS 415/11 (West 2000).

### a. *Timeliness of Defendants' Hearings*

■ Defendants contend that their employment was terminated in January and February 2003 and that they all requested hearings within 15 days of their termination, or by February 11, 2003, at the latest. Defendants assert that although the Commission held conferences regarding their cases within the 30-day period, those proceedings did not satisfy the hearing requirement. They argue that their hearings were not "held" until May 2003, when the ALJ began to hear testimony.

Plaintiffs agree that six of the seven defendant employees requested hearings before February 11, 2003; they state that Booker did not appeal her case to the Commission until March 25, 2003. However, plaintiffs argue that, as to all seven defendants, the Commission began hearings in February and March 2003, within 30 days of each defendant's written notice to the Commission. Citing *Ragano v. Civil Service Comm'n*, 80 Ill. App. 3d 523, 400 N.E.2d 97 (1980), plaintiffs correctly assert that although the Commission must begin a hearing within 30 days of the employee's filing of a request, the hearing need not be completed within 30 days. In addition, plaintiffs object to defendants' contention that the hearings were delayed by plaintiffs' discovery requests, and they argue that defendants not only agreed to the timing of the hearings but also made abundant discovery requests of their own.

Defendants do not assert that their hearings were not commenced within 30 days, only that they were not "held" within 30 days. Again, section 11 does not require that the Commission complete its hearing within 30 days of defendants' request, only that the hearing must be "granted, scheduled and started within 30 days of the written notice." *Hardaway v. Civil Service Comm'n*, 52 Ill. App. 3d 494, 497, 367 N.E.2d 778, 780 (1977) (noting the Illinois Supreme Court's recognition that continuances are sometimes necessary in proceedings before the Commission). For that reason, defendants' argument on this issue is unavailing.

Furthermore, the *Hardaway* court observed that requiring the completion of a hearing within 30 days could prompt a party to unnecessarily extend the presentation of evidence beyond that 30-day window, thus nullifying the proceedings. *Hardaway*, 52 Ill. App. 3d at 497, 367 N.E.2d at 780. Although we have held that the Commission

complied with the Personnel Code by commencing defendants' hearings within 30 days, we hasten to add that given the voluminous record in this case and the number of employees involved, along with the ALJ's attempt to streamline the proceedings by identifying at the outset any issues common to all defendants, the timetable of hearings in this case was reasonable.

### b. *Timeliness of Commission's Decision*

Defendants next contend that they are entitled to reinstatement to their state employment because the Commission failed to render its decision within 60 days of receiving the transcript of proceedings. Defendants assert that the Commission received a transcript on July 21, 2003, and therefore was required to render a decision by September 19, 2003. As with the 30-day period for commencing a hearing, the requirement that the Commission make a final decision in a case within 60 days of receiving the transcript of proceedings is mandatory. *Epstein v. Civil Service Comm'n*, 47 Ill. App. 3d 81, 86, 361 N.E.2d 782, 786 (1977).

The record indicates that the Commission's decision was dated September 18, 2003, which was within the 60-day period. Nevertheless, defendants assert that the Commission's decision was not "rendered" until five days later, on September 23, 2003, when it was delivered to the clerk of the Commission and mailed and/or delivered to defendants. In support of that assertion, defendants cite *Nudell v. Forest Preserve District*, 207 Ill. 2d 409, 799 N.E.2d 260 (2003). However, in *Nudell*, the Illinois Supreme Court decided that the 35-day period for filing a complaint for administrative review begins on the date that the decision being appealed is placed in the United States mail, as opposed to the date that the affected parties actually receive the decision, noting the clear language of section 3—103 of the Administrative Review Law (735 ILCS 5/3—103 (West 1998)). *Nudell*, 207 Ill. 2d at 424, 799 N.E.2d at 268.

Defendants maintain that the Commission's September 18, 2003, ruling was not a "decision" that they could appeal. They attempt to make use of *Nudell* by contending that they could not have appealed from the Commission's decision until it was mailed to them on September 23, 2003. We do not find *Nudell* applicable here, since it involves the commencement of the time period for filing an administrative review complaint, as opposed to the ending of the time period for a Commission decision, which is the subject of defendants' current challenge.

As plaintiffs point out, the Illinois Administrative Code indicates that a decision of the Commission becomes final "at the time it is

made in writing and announced at an open and public meeting of the Commission." 80 Ill. Adm. Code § 1.270(b) (2000). Because the Commission's written order was dated and made public on September 18, 2003, we reject defendants' assertion that the decision was untimely.

### 5. The Right to Pretermination Hearings

■ Defendants also contend that they were denied procedural due process under the Personnel Code because they did not receive pretermination hearings as required by section 302.705 of the Administrative Code (80 Ill. Adm. Code § 302.705 (2002)). It is noteworthy that that provision is part of the "merit and fitness" section of administrative rules under the Personnel Code, which defendants previously contended does not apply to term appointments.

The relevant administrative regulation, promulgated by CMS, begins: "Before an agency shall suspend any certified employee pending decision on discharge or bring charges for discharge against any certified employee ***." 80 Ill. Adm. Code § 302.705 (2002).

The Illinois Administrative Code defines a certified employee as:

"any employee currently employed in a position subject to jurisdiction B who has satisfactorily completed a required period of probation and attained certified status in any position during the employee's most recent period of continuous State service." 80 Ill. Adm. Code § 302.625 (2002).

See also *Cherniavsky v. Department of Labor*, 74 Ill. App. 3d 517, 520, 392 N.E.2d 1135, 1137-38 (1979) (employee is certified upon completing required period of probation).

We have determined that because the October 15 amendments conflicted with the Personnel Code, the amendments were void *ab initio*. Therefore, when the defendant employees were discharged, none of them had completed their four- to six-month probationary period and thus were not entitled to a pretermination hearing under section 302.705, which applies only to certified employees.

### 6. Section 5—10(c) of the Administrative Procedure Act

■ As a final matter, this court reaches defendants' assertion that even if we find the October 15 amendments void, plaintiffs cannot seek to invalidate their own actions. Defendants rely on the following provision of the Administrative Procedure Act:

"No agency rule is valid or effective against any person or party, nor may it be invoked by the agency for any purpose, until it has been made available for public inspection and filed with the Secretary of State as required by this Act. *No agency, however, shall assert the invalidity of a rule that it has adopted under this Act when an opposing party has relied upon the rule.*" (Emphasis added.) 5 ILCS 100/5—10(c) (West 2000).

Defendants distinguish the administrative rulemaking principles in the previous sections of this opinion by contending that the amendments were proposed, adopted and utilized by CMS and that CMS therefore is estopped from denying their validity. Defendants argue that because they relied on the passage of the October 15 amendments by CMS, plaintiffs (which include CMS and other state agencies) cannot now assert that the amendments are invalid.

Plaintiffs respond that an illegitimate provision cannot be transformed into a legal rule when relied upon by those it was unlawfully designed to benefit, *i.e.*, by claiming reliance on an invalid rule, defendants cannot transmute the provision into a valid one. Plaintiffs also assert that even if section 5—10(c) was to apply here, many of the defendant employees could not have relied on the October 15 amendments in good faith because they knew of the likelihood that the incoming governor would challenge the amendments.[5]

We first address defendants' contention that CMS seeks to invalidate its own rule. It is true that the plaintiff agencies that now challenge the rule include the Department of Central Management Services, which is the same entity that proposed the rules under Governor Ryan. CMS is one of the 13 state departments that now contest the amendments' validity. However, the amendments were promulgated in October 2002 by CMS at the direction of then-Governor Ryan and were challenged in January 2003 by a different administration, that of incoming Governor Blagojevich.

The key players in this analysis are not the plaintiff state agencies but, rather, the two gubernatorial administrations. Michael Rumman, CMS director under Governor Blagojevich, stated in a deposition that shortly after the Governor took office in January 2003 and Rumman started work at CMS, the Governor's chief legal counsel "indicated to [him] the intent to terminate these individuals" and that the direction to do so "came from the [G]overnor's office." Monk, Governor Blagojevich's chief of staff, gave similar testimony. Rumman said that CMS' execution of the necessary paperwork was based on the legal counsel's representation that the amendments were invalid. Indeed, defendants admit in their brief that the decision to discharge the employees from their state positions was prompted by the change in gubernatorial administrations and, although implemented by CMS, was "made within the Office of the Governor." Therefore, we find that

---

[5]The record indicates that one defendant employee resigned from her state position effective November 30, 2002, voicing concern that the rule changes "might not hold up." Other defendants stated that they were aware that the incoming administration could vacate their term positions.

CMS does not now seek to invalidate its "own" rule under the meaning of section 5—10(c).

We further agree with plaintiffs that the rationale of section 5—10(c) is not to transform an improperly passed rule into a valid rule by virtue of the opposing party's reliance. Read in its entirety, section 5—10(c) addresses an agency's obligation to provide formal notice of a proposed rule and limits an agency's ability to disinherit a rule if the rule's invalidity stems from the agency's failure to comply with the public inspection and filing requirements described in the section. As plaintiffs assert, it is logical to allow an opposing party to rely on its actual knowledge of the rule to support the rule's validity. However, defendants' attempt to invoke the rule here would create a type of estoppel that essentially would validate rules that were improperly promulgated.

The legislative history of section 5—10(c) reveals that the last sentence of that statutory section was added in response to the Illinois Department of Revenue's attempt to assess a tax retroactively. See *Illinois Bell Telephone Co. v. Allphin*, 95 Ill. App. 3d 115, 124, 419 N.E.2d 1188, 1196-97 (1981), *aff'd*, 93 Ill. 2d 241, 245, 443 N.E.2d 580, 582 (1982). In *Allphin*, the appellate court found that the Department of Revenue's regulations at the pertinent time stated that interstate revenues were not subject to a particular tax and that Illinois Bell had accordingly excluded those revenues from its tax computation. *Allphin*, 95 Ill. App. 3d at 124, 419 N.E.2d at 1196-97. Holding that the Department could not retroactively assess the tax, the appellate court held that the Department attempted, "to the absolute detriment of the taxpayer who relies on the Department's rules and regulations, [to] totally ignore its own written rules and regulations and retroactively assess a tax when clearly none was due" under the rules in effect during the relevant tax period. *Allphin*, 95 Ill. App. 3d at 126, 419 N.E.2d at 1198.

Therefore, in *Allphin*, the state's Department of Revenue attempted to disavow its own regulations, and Illinois courts prohibited the Department from retroactively applying newly revised rules when the complaining party had relied on the original rules in effect at the time. After *Allphin* was decided, the Illinois legislature added the final sentence to section 5—10(c) to reflect that principle. 83d Ill. Gen. Assem., Senate Proceedings, June 21, 1984, at 91 (statements of Senator Bloom).

Here, unlike in *Allphin*, the defendant employees are attempting to enforce, by their alleged reliance, administrative rules that conflict with their enabling statute. Furthermore, in contrast to *Allphin*, the rules being challenged were promulgated by a different administration

than that which now seeks their invalidation. Accordingly, we hold that section 5—10(c) is inapplicable to this case, and defendants cannot rely on that provision to validate the October 15 amendments. Because we have held that section 5—10(c) does not apply, we do not consider the factual question of whether any of the defendant employees relied on the amendments' validity in accepting their term appointments.

## CONCLUSION

Because the Commission lacked subject matter jurisdiction over the cases of defendants Backfield, Barrow, Brown, Ciarlo, Cole, Hampton, Harmeyer, Kimble, Madigan, Messina, Murphy, Narup, Overaker, Trees, Urbanek, Vega, Vespa, Williams, Woodward and Wyatt, we vacate the Commission's order reinstating them to their state positions. In addition, because the remaining seven defendants, Booker, Dutton, Fulgenzi, LeBegue, Nelson, Parker and Turnbull, were appointed under the October 15 amendments, which we have found void *ab initio*, those individuals were within their probationary period when their employment was terminated by the Blagojevich administration. We therefore reverse the Commission's order reinstating those employees to their state jobs. Moreover, we reject those defendants' contentions that the Commission failed to hold timely hearings or issue a decision within the period required by the Personnel Code.

Plaintiffs ask this court to order all of the defendant employees to disgorge the back pay and benefits that they have received since they were reinstated by the Commission. Plaintiffs make no further argument on this issue and offer no citation to authority. See 188 Ill. 2d R. 341(e)(7) (requiring arguments to be accompanied by reference to supporting authority). Plaintiffs do not contend that any of the defendant employees who have remained in state service since their reinstatement on September 18, 2003, have not performed their jobs during that period in exchange for the compensation received. Therefore, plaintiffs' request on this point is denied.

Vacated in part and reversed in part.

NEVILLE, J., concurs.

PRESIDING JUSTICE CAMPBELL, dissenting:

I respectfully dissent. The issues before this court on appeal are: (1) whether the Commission has subject matter jurisdiction over the appeals of the defendant state employees; and (2) whether the

"October 15" rules promulgated by CMS were valid. These two questions are inextricably intertwined. Under a proper analysis on administrative review, I would answer both of these questions in the affirmative. The majority opinion is rife with fact finding and conclusions which are improper on the appellate review of an administrative decision.

## I

Initially, the majority declares the applicable standard of review as *de novo*, based on the assertion of the plaintiff agencies and the majority's determination "[g]iven the procedural history of this case." 357 Ill. App. 3d at 361. I disagree.

Judicial review of a decision of the Commission is governed by the Administrative Review Law (735 ILCS 5/3—101 *et seq.* (West 2000)). 820 ILCS 405/1100, 2205 (West 2000). Under the Administrative Review Law, the scope of judicial review extends to all questions of law and fact presented by the record before the court. 735 ILCS 5/3—110 (West 2000). The applicable standard of review, which determines the degree of deference given to the agency's decision, depends upon whether the question presented is one of fact, one of law, or a mixed question of law and fact. *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 763 N.E.2d 272 (2001); *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 204-05, 692 N.E.2d 295 (1998); *Branson v. Department of Revenue*, 168 Ill. 2d 247, 265, 659 N.E.2d 961 (1995).

In *City of Belvidere*, our supreme court set forth the "clearly erroneous" standard of review for questions of mixed law and fact. A mixed question of law and fact is one "involv[ing] an examination of the legal effect of a given set of facts." *City of Belvidere*, 181 Ill. 2d at 205. This standard of review is described as lying "between a manifest weight of the evidence standard and a *de novo* standard," so as to provide "some deference" to the agency's decision. *City of Belvidere*, 181 Ill. 2d at 205. Meanwhile, even when we review an agency's interpretation of a statute *de novo*, we acknowledge that the agency's interpretation was "relevant." *Branson*, 168 Ill. 2d at 254.

When the decision of an administrative agency presents a mixed question of law and fact, the agency decision will be deemed "clearly erroneous" only where the reviewing court, on the entire record, is " 'left with the definite and firm conviction that a mistake has been committed.' " *AFM Messenger*, 198 Ill. 2d at 393, quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 92 L. Ed. 746, 766, 68 S. Ct. 525, 542 (1948).

In the present case, the Commission's decision presents a mixed

question of law and fact. The Commission's decision is, in part, factual because it involves considering whether the facts support the finding that the defendant employees were improperly terminated under the rules. At the same time, the Commission's decision also concerns a question of law, as the plaintiff agencies allege that the regulation by which the employees were appointed to their respective positions was improperly promulgated and therefore void. Accordingly, the standard of review applicable to the aforementioned questions is the "clearly erroneous" standard. This court must determine whether the decision of the ALJ to reinstate the defendant employees, based on his presumption that the October 15 rules were properly promulgated, as adopted by the Commission, was clearly erroneous.

## II

As I noted above, the questions before this court are effectively inseparable. To review the relevant facts: 13 state agencies dismissed 27 defendant state employees without cause and without notice early in January and February 2003. The record shows that the plaintiff agencies provide diverse functions to the State of Illinois and that each position held by the 27 employee defendants was distinct, as provided for by individual position descriptions. The defendant employees immediately filed individual appeals of their terminations, each requesting hearings by the Commission, pursuant to the Commission rules regarding discharge appeals.

On March 27, 2003, plaintiffs filed a combined motion to dismiss defendants' individual requests for hearings arguing that the rules under which defendants were appointed to their respective state positions, the October 15 rules, were "void" for failing to comply with the "submission requirement of the Personnel Code," which purportedly requires that any proposed rules implementing the Code be submitted to the Commission prior to becoming effective. Plaintiffs further argued that the October 15 rules "illegally" changed the procedure that previously required that employees wait through a probationary period of six months prior to being eligible for these particular positions of employment.

Plaintiffs' argument that the Commission lacked jurisdiction to hear the defendants' appeals is generated out of plaintiffs' belief that the October 15 rules were void and therefore defendants improperly held their positions in the first place.

Notwithstanding the objection of the plaintiffs, the Commission commenced the individual and consolidated hearings of the defendant employees pursuant to the rules pertaining to their employment status. On September 5, 2003, the administrative law judge (ALJ) is-

sued a "Decision on Petitioner's Motion to Dismiss." Therein, the ALJ made the following findings of fact: (1) no action of any type was initiated by anyone to challenge the October 15, 2002, rule changes except the immediate discharge of defendants based on opinions received from outside counsel; (2) the Civil Service Commission is empowered to hear and determine written charges filed seeking the discharge of employees; (3) plaintiffs terminated certified employees; and (4) the Commission has the jurisdiction to decide the propriety of the discharges of the employees. The ALJ denied the plaintiffs' motion to dismiss.

The ALJ then commenced to issue his "Decision and Recommendation." Initially, the ALJ determined that the Commission has the jurisdiction to determine the appeals of the defendant employees. The ALJ then issued the following findings of fact: (1) administrative rules and regulations are presumed to be valid; (2) both sides of the case raised interrelated issues which create questions of law; (3) the Commission is charged with hearing discharge appeals. Discharge cases are fact-based and are resolved on the basis that the employee either did or did not violate a policy of an agency to the extent that the employee's conduct would warrant discipline up to and including discharge; (4) while the Commission rules upon certain questions of law and jurisdictional issues, in general, those rulings are based on recommendations by the administrative law judge based on an understanding of statutes and case law. Finally, the ALJ issued his opinion as follows:

"It is my opinion that the Commissioners should not be put in a position to make significant rulings of law in cases of first impression. This case was initiated when the Executive Branch of Government, relying on legal opinions, solicited from non-governmental attorneys who were apparent partisans in an election, relied upon an opinion of those lawyers and determined that prior conduct of the Joint Committee on Administrative Rules acted inconsistently with statutes and acted in contravention to requirements that had previously been imposed on hiring as determined by CMS, the legislature, and the Courts. In other words, this case involved the Executive Branch of Government ruling that the conduct of the Legislative Branch was illegal resulting in the discharge of many State employees.

The Commission, I need to point out[,] is an arm of the Executive Branch of Government. It is created by Statute in the Chapter of Illinois Laws that deals with the Executive Branch. There are some *quasi judicial* functions performed by the Commission, but it was, in my opinion, never intended to serve as an arbiter of disputes between the Legislature and the Executive.

The proper forum for this decision is the Circuit Court, and if necessary, higher Courts. Traditionally, the Courts resolve disputes between the Executive and the Legislature, and in my view after cutting through all of the facts and briefs, that's what this case is all about.

My recommendation to the Commission is for the Commission to presume that the Rules are proper and were properly promulgated. Based on that recommendation, it necessarily follows that the employees need to be reinstated."

The Commission adopted the recommendation of the ALJ, without making any new findings of fact. Plaintiffs filed a complaint in administrative review in the trial court requesting that the decision of the Commission be rendered void for want of subject matter jurisdiction, reversed as "contrary to the law and public policy of the State of Illinois," or reversed as against the manifest weight of the evidence. The trial court, in affirming the decision of the Commission, made no new findings of fact.

### III

The ALJ properly characterizes this action as a dispute between the executive branch and the legislature. The Commission adopted the decision of the ALJ. The ALJ determined that it was not within the province of the Commission to determine the validity of the October 15 rules. The ALJ further found that if the executive branch believed that the statute was improperly enacted or unconstitutional, it was incumbent upon the executive branch to take its case against the legislature directly to the court system or back to the legislature to amend the statute.[6] And yet, the executive branch did no such thing. Instead, the plaintiffs, under the orders of the executive branch, and based on the advice of outside and "politically partisan counsel," *ipso facto* determined that the law was "void," and *sua sponte* issued letters of termination to the defendant employees; essentially shooting first and asking questions later. The plaintiffs then attempted to bootstrap their belief in the invalidity of the October 15 rules, without making a proper claim, onto the ordinary hearing procedure for appeals of termination.

It is well settled that issues not raised in the trial court are deemed waived and may not be raised for the first time on appeal. *Haudrich v. Howmedica, Inc.*, 169 Ill. 2d, 525, 536 (1996); *Daniels v. Anderson*, 162 Ill. 2d 47, 58-59 (1994). In *Daniels*, our supreme court held that " 'the theory upon which a case is tried in the lower court cannot be changed on review, and *** an issue not presented to or considered by the trial

---

[6]In fact, plaintiffs eventually did so: see *infra*.

court cannot be raised for the first time on review.' " *Daniels*, 162 Ill. 2d at 58, quoting *Kravis v. Smith Marine, Inc.*, 60 Ill. 2d 141, 147 (1975).

The majority, however, without precedent and authority, delves into the record of the hearings and into hearsay *de hors* the record to reinterpret the facts in order to make its own and numerous findings of fact contrary to the standard of review on administrative appeal. After making its own findings of fact, the majority leads us on a field excursion through the legislative process. Along the way, the majority, echoing the plaintiffs' brief, complains that in enacting the October 15 rules, CMS refused to comply with the recommendations of JCAR. At the same time, the majority concedes in a footnote and within the text of the opinion that "[t]he opinions of JCAR are not binding on administrative agencies," and that CMS properly submitted a response to the recommendation issued by JCAR, with an explanation for the changes in the rules. 357 Ill. App. 3d at 359 n.2.

Finally, based on its own fact-finding, the majority concludes that the October 15 rules are *void ab initio*, *i.e.*, "from their inception" based on the illogical argument that the prior rules were "different" than the amended rules; the prior rules for probation required a 6-month period of eligibility, while the amended rules required 30 days.

The posture of this case is such that this court assumes common questions of law and fact and defers to the expertise of the agency to determine whether a serious mistake has been committed by the administrative body. The majority fails to recognize that by the time of the commencement of the individual hearings, the defendant employees would have held their respective positions in excess of six months, thereby more than meeting the prior standard for employment eligibility. The record fails to suggest that the defendants were unqualified to hold their respective positions; that the various agencies intentionally hired individuals who were unqualified for the respective positions; or that the agencies failed to comply with the appropriate hiring procedures. No mistake is apparent.

The majority distinguishes between gubernatorial administrations rather than recognizing that every gubernatorial administration *is* the same branch of government: the executive branch. To adopt the majority's opinion one would have to believe that with every change of administration, all laws enacted during a prior administration are unlawful. The majority improperly acts as a vehicle to promote politics rather than reviewing the administrative decision before this court.

The majority's further conclusion that the October 15 rules somehow altered the enabling statute's operation is without support

in the record. The majority relies on a series of cases where it was held that police departments unlawfully promulgated probation rules in order to effectuate demotions which conflicted with the Illinois State Police Act (*Popejoy v. Zagel*, 115 Ill. App. 3d 9, 449 N.E.2d 1373 (1983)) or the sheriff's merit system act (*Vanko v. Sheahan*, 278 Ill. App. 3d 302, 662 N.E.2d 512 (1996)). These cases are inapposite. The personnel rules applicable to the Cook County sheriff are governed by the sheriff's merit system act (55 ILCS 5/3—7008 (West 2002)), which establishes appointment eligibility criteria, and the personnel rules applicable to the Illinois State Police are governed by the rulemaking authority of the Illinois State Police Act (20 ILCS 2610/0.01 *et seq.* (West 2002)). Neither police department is subject to the rulemaking of the Administrative Procedure Act, which sets forth its own distinct rulemaking criteria.

In the present case, the defendant employees were properly certified according to the October 15 rules, which did not purport to extend the power of the Civil Service Commission. The October 15 rules purported to reduce the probationary period from 6 months to 30 days. Section 8b.6 of the Personnel Code provides for probationary periods "up to one year." A 30-day probationary period is, by definition, within one year.

The majority further notes via footnote that subsequent to the entry of the decision of the Commission and during the pendency of the present case, effective November 19, 2003, the Illinois legislature enacted an amendment to the Personnel Code section 90—11, providing: "for a person appointed to a term appointment under Section 8b.8 or 8b.19, the period of probation shall not be less than 6 months." See 357 Ill. App. 3d at 366 n.4. This very legislation is evidence that the plaintiffs are well aware of the appropriate method for amending legislation.

## IV

As stated above, our review here involves a mixed question of law and fact. The facts as found by the ALJ, and adopted by the Commission, support the determination that the defendant employees were improperly terminated under the rules pertaining to their employment. "To say that a court is 'not bound' by the administrative determination does not mean, however, that the court is free to wholly ignore the ruling, afford it no probative value, or substitute its own findings on the matter after conducting a *de novo* review of the evidence." *In re Austin W.*, 214 Ill. 2d 31, 55 (2005). Judicial review of an administrative agency decision is limited. Courts may not consider evidence outside of the record of the administrative appeal, reweigh

the evidence to determine where the preponderance lies, or evaluate the credibility of the witnesses. 735 ILCS 5/3—110 (West 2002); *In re Austin W.*, 214 Ill. 2d at 56, citing *Lyons v. Department of Children & Family Services*, 209 Ill. 2d 264 (2004).

Under the facts found by the ALJ and adopted by the Commission, the question of law, whether the defendant employees were appointed to their positions under an improperly promulgated rule, was properly answered in the negative by the trial court. There are no facts in the record which reveal that the rules were improperly amended to reduce the probationary period. The plaintiffs' allegations are fraught with hearsay attempts to circumvent an ordinary interpretation of the applicable enabling statutes.

The record further shows that plaintiffs never raised the issue of the constitutionality of the October 15 rules at the trial court level; thus the trial court was never afforded the opportunity to rule on any constitutional violation. While a *party* may raise a constitutional challenge to a statute at any time (*People v. Zeisler*, 125 Ill. 2d 42, 46, 531 N.E.2d 24 (1988)), this court cannot, *sua sponte*, determine that a constitutional violation has ensued. Any constitutional issue is waived on review. See *Haudrich*, 169 Ill. 2d at 536; *Daniels*, 162 Ill. 2d at 58. Meanwhile, well aware of the flaws of its arguments here, and concurrent to the pendency of this action, plaintiffs undertook to reamend the rules under the proper legislative process to reinstate a probationary period of six months for certain types of employees. Under the clearly erroneous standard of review, no mistake has been committed by the Commission in presuming that the October 15 rules were properly promulgated and that the defendant employees were improperly terminated.

For these reasons, I would affirm the decision of the Commission and the judgment of the trial court.